ROSA CULLIN, Plaintiff, *v.* THE SUPREME TENT OF THE KNIGHTS OF THE MACCABEES OF THE WORLD, Defendant.

*Construction of the constitution of a mutual benefit association.*

The constitution of a corporation the object of which was to establish a benefit fund, from which, on satisfactory evidence of the death of a member, a sum not exceeding $2,000, should under certain conditions be paid to his widow, children, dependent, mother, father, sister or brother as he might direct, and as the endowment laws provided, contained the provision "that no transfer or assignment of a certificate will be binding on this association, unless consent is given thereto by the supreme commander and supreme record keeper, and the surrender to this association of the certificate so transferred or assigned."

*Held*, that to transfer the certificate to any other than the party named there must be a revocation of the payment directed to be made to the beneficiary named, by the transfer or the assignment of the certificate to another;

That no consent to a revocation of a direction to pay to a certain person was required.

Such constitution further provided: "In the event of the death of all the beneficiaries named by the member before the decease of such member, if no other disposition be made thereof, the benefit shall be paid to the beneficiaries of the deceased member, first, in the order named in the preceding section; and if no person or persons shall be found entitled to receive the same by the laws of the order, then it shall revert to the endowment fund of this association."

It also provided: "In case no direction is made by the member in such certificate, and he leaves no widow, children, dependents, father, mother, sister or brother, the benefit shall revert back to the endowment fund of the supreme tent."

*Held,* that such provisions should be construed together;

That in the event of the death of the beneficiaries named in the certificate, before the decease of the member, if no other disposition had been made thereof, or in a case where no direction had been given by the member in such certificate, the benefit should be paid to the beneficiaries of the deceased member;

That where the appointment of a beneficiary named by a member was subsequently revoked, and no other beneficiary was named, and there was no transfer of the certificate, the certificate must be treated as if no designation had been made.

MOTION by the defendant, The Supreme Tent of the Knights of the Maccabees of the World, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, after verdict for $2,293.33 had been rendered in favor of the plaintiff, by direction of the court on a trial at the Cattaraugus Circuit.

*W. H. Nourse,* for the plaintiff.

*G. M. Rider,* for the defendant.

HAIGHT, J.:

The principal exception brought up for consideration was taken to the direction of a verdict in favor of the plaintiff.

This action was brought to recover the sum of $2,000 upon an endowment certificate issued by the defendant to the plaintiff's husband. The defendant is a corporation organized under the laws of Michigan, having its principal office at Port Huron in that State. Its object, among other things, is " to establish a benefit fund, or funds, from which, on satisfactory evidence of the death of a member of the Order who has complied with all its lawful requirements, a sum not exceeding $2,000 shall be paid to the widow, children, dependent, mother, father, sister or brother of a member, as he shall direct, and as the endowment laws provide," etc. Subordinate tents are established at different places under charters issued from the supreme tent. Under such a charter there was organized at Olean, N. Y., a subordinate tent known as Riverside Tent No. 10. On or about the 12th day of February, 1890, John Cullin, the plaintiff's husband, upon his own application, was admitted as a

member of Riverside Tent No. 10, and thereafter, and on or about the 10th day of March, 1890, the defendant issued to him its certificate of endowment, No. 7,128, which, among other things, contains the following provision : " This certifies that Sir Knight John Cullin has been regularly admitted in and is recognized as a member in good standing of Riverside Tent No. 10, located at Olean, N. Y., and that in accordance with and under the provisions of the laws governing the Order, his legal beneficiary named therein is entitled to receive one assessment on the membership, not exceeding $2,000, and said sum will be paid as a benefit to Mrs. Margaret Rochford, his niece, dependent, upon satisfactory proof of his death, together with the surrender of this certificate," etc. John Cullin died on the 12th day of September, 1890. The complaint, among other things, alleges that "after the death of said Cullin, satisfactory proofs of death were made out and forwarded, and this certificate surrendered to the defendant in compliance with the laws, rules and constitution of the defendant in such cases made and provided, and payment thereof duly demanded, which was refused." It is further alleged in the complaint " That said certificate of insurance was made payable to one Margaret Rochford, a dependent, and that said John Cullin, on the 1st day of July, 1890, being of sound mind and memory, revoked said direction of payment to said Margaret Rochford, and died without leaving any legal directions as to its payment   *   *   * and with knowledge of such revocation on the part of the defendant it received several assessments, dues and *per capita* tax thereunder, and continued said insurance." These allegations are not denied by the answer, and, therefore, for the purposes of the trial stand as admitted facts in the case. Does the plaintiff as the widow of John Cullin become entitled to the fund upon his death, the direction of payment to Mrs. Rochford having been revoked ? This question must be determined from the constitution of the defendant. The right of revocation appears to be sanctioned by article 11, section 10 of the constitution, which provides that " No transfer or assignment of a certificate will be binding on this association unless consent is given thereto by the supreme commander and supreme record keeper, and the surrender to this association of the certificate so transferred or assigned." The certificate could not well be trans-

ferred or assigned to another without a revocation of the payment directed to be made to the beneficiary therein named. The transfer referred to is by the member of the order. This is apparent from the sentence which precedes that quoted, which limits the right of a member to transfer the certificate to any person other than his wife, children, dependents, mother, father, sister or brother. There must, therefore, be a revocation of the direction to pay the beneficiary named, and then a transfer or an assignment to another person. The transfer or assignment to another person can be made only upon the consent of the supreme commander and supreme record keeper, but no consent to a revocation of the direction to pay to the person named appears to be required. Section 11 of the same article provides that " In the event of the death of all the beneficiaries named by the member before the decease of such member, if no other disposition be made thereof, the benefit shall be paid to the beneficiaries of the deceased member, first, in the order named in the preceding section ; and if no person or persons shall be found entitled to receive the same by the laws of the Order, then it shall revert to the endowment fund of this Association." It is claimed, however, that this section has no application to the case under consideration, for the reason that it is limited to an event in which the death of all the beneficiaries precedes that of the member, and the member has neglected to designate another beneficiary. But in this connection we have the concluding clause of section 7 of article IV, which provides that " In case no direction is made by the member in such certificate, and he leaves no widow, children dependents, father, mother, sister or brother, the benefit shall revert back to the endowment fund of the supreme tent." So that it is apparent from this provision that it was not intended that the fund should revert to the supreme tent or to the association, should the deceased leave a widow, children, dependents, father, mother, sister or brother ; and the inference is that it was intended and understood that in case no direction was made by the member in the certificate as to the person to whom the endowment should be paid, it should be paid to the widow, children, etc., in the order named, in case she or they survive him. Section 11 and section 7 should be read and construed together, and when so considered the intention

is to our minds quite apparent, and it is that, in the event of the death of the beneficiaries named in the certificate before the decease of the member, and if no other disposition be made thereof, or in a case where no direction has been made by the member in such certificate, the benefit should be paid to the beneficiaries of the deceased member, first, in the order named in section 10, which is, first, to the widow, if there be one; if not, to the children, if any survive; if not, to the dependents, etc. It is true the plaintiff first designated Mrs. Rochford as the beneficiary in the certificate, but he subsequently revoked such designation, and thereafter the certificate remained without any designation. Mrs. Rochford would not be entitled, because her designation had been revoked. The fund would not revert to the supreme tent, because the constitution provides that it shall only so revert back in case the member does not leave a widow, children, etc. We think, therefore, that the certificate must be treated as if no designation had been made, and that, under our interpretation of the provisions of the sections quoted, the plaintiff becomes entitled to the fund.

Upon the trial three reports of the finance keeper of the subordinate tent to the supreme tent were offered in evidence for the purpose of showing that John Cullin had been suspended as a member of the order for the non-payment of assessment No. 53. They were objected to and rejected by the court. L. A. Mallory was the finance keeper. These reports were made out by one J. J. Quigley, who testified that he was authorized by the finance keeper to make out the reports in his name. They contained statements to the effect that John Cullin was suspended August tenth for non-payment of assessment No. 53. Mallory was sworn as a witness upon the trial, and testified that he was the finance keeper of the Riverside Tent; that assessments were payable to him; but he does not state that any assessment was due and owing from Cullin at the time of his death, or that he had been suspended because of the non-payment of any assessment. No evidence was introduced showing that the supreme tent had by resolution or otherwise made any such assessment. There was evidence to the effect that the *Bee Hive* was the official paper of the order, in which notices of assessment were printed. It appears that a bundle of the *Bee Hive* papers came to the post-office in Olean, and that John Cullin's name

was on one of the papers; but as to whether the paper contained notice of any assessment the case is silent. So that we have no evidence that such an assessment was ordered, or evidence of the service of any notice of it upon John Cullin, or evidence that all of the assessments were not paid by him to the finance keeper. There is only the report of Quigley, the local record keeper, made out in the name of the finance keeper above referred to. We think the reports were not evidence, and that they were properly excluded by the court.

Under the view taken by us the evidence to the effect that Mrs. Rochford was not a dependent was immaterial, but it could do no harm, for that fact was alleged in the complaint and was not denied by the answer.

It was not necessary to prove service on the association of the proofs of death, for that fact, as we have seen, was also alleged in the complaint and not denied.

The defendant's motion for a new trial should be denied, and judgment ordered for the plaintiff upon the verdict.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Motion for new trial denied, with costs, and judgment ordered for plaintiff upon the verdict.