### ELLIOTT v. UNITED STATES et al.

(District Court, N. D. Ohio, E. D.   December 9, 1920.)

No. 563.

1. **Army and navy** ⊙—51½, New, vol. 12A Key-No. Series—**Secretary of Treasury not proper defendant in suit for war risk insurance.**

   In a suit to determine the right of several claimants to installments due on a war risk insurance certificate issued to a soldier, the Secretary of the Treasury is not a proper party defendant.

2. **Army and navy** ⊙—51½, New, vol. 12A Key-No. Series—**Suit to determine right to war risk insurance held equitable.**

   War Risk Insurance Act, § 402 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), authorizing an action against the United States on certificate of war risk insurance, includes any form of action, legal or equitable, appropriate to the facts in the case, and a suit by a claimant against the United States and an adverse claimant to have the right of the plaintiff to the installments determined, in which the United States had brought in as defendants two other possible claimants, presents equitable issues rather than legal, so that it will not be transferred to the law side of the court.

⊙—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Army and navy ⬤⇒51½, New, vol. 12A Key-No. Series—War Risk Insurance Act permits change of beneficiaries but not revocation.**

War Risk Insurance Act, § 402 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), giving insured the right to change the beneficiaries without their consent, merely authorizes insured to make a change in the beneficiaries, but does not authorize him to cancel the certificate or revoke the designation of beneficiaries without the designation of a new beneficiary.

4. **Army and navy ⬤⇒51½, New, vol. 12A Key-No. Series—Void designation of new beneficiary does not defeat right of original beneficiary.**

Where an applicant for war risk insurance had properly designated his mother as beneficiary, a subsequent designation by him of a wife, which was void because both the soldier and the designated wife were then married to others, does not have the effect of nullifying the designation of the mother as the beneficiary, and she is entitled to the insurance notwithstanding the attempted change.

5. **Army and navy ⬤⇒51½, New, vol. 12A Key-No. Series—Recognition of child held not to show designation of mother as beneficiary was in trust.**

Where the designation by a soldier of a wife as beneficiary of his war risk insurance was void because both parties were then married to others, the recognition by the soldier of a child as his own is not sufficient to show that his designation of the child's mother as the beneficiary was intended to be in trust for the child, who could have been designated as beneficiary under War Risk Insurance Act, § 402 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), and Gen. Code Ohio, § 8591.

In Equity. Suit by Ruth Elaine Elliott, a minor, by her next friend, Adeline M. Elliott, against the United States of America, David F. Houston, Secretary of the Treasury, and another, in which the United States had Adeline M. Elliott and another made parties defendant. Motion to dismiss suit as to defendant David F. Houston sustained, motion to transfer the cause to the law side of the court denied, and decree entered determining that defendant Mary Cecelia Elliott is the beneficiary of the war risk insurance involved.

Herrick, Hopkins, Stockwell & Benesch, of Cleveland, Ohio, for plaintiff.

Paul Howland, of Cleveland, Ohio, for defendant Mary Cecelia Elliott.

William J. Dawley, of Cleveland, Ohio, for defendant Anna Maguire Elliott.

Harry L. Eastman, Asst. U. S. Dist. Atty., of Cleveland, Ohio.

WESTENHAVER, District Judge. This action was brought originally against the United States of America, David F. Houston, Secretary of the Treasury, and Mary Cecelia Elliott, and involves conflicting claims to the war insurance of Andrae Hugh Elliott, an enlisted man of the United States military forces, who was killed in France December 21, 1918. The controversy arises under the War Risk Insurance Act of October 15, 1917, as later amended by act June 25, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 514a, 514kk et seq.). The insurance certificate was issued, and the disposition of the proceeds thereof is to be made under section 402 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu). This section, so far as material, is as follows:

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That the director, subject to the general direction of the Secretary of the Treasury, shall promptly determine upon and publish the full and exact terms and conditions of such contract of insurance. The insurance shall not be assignable, and shall not be subject to the claims of creditors of the insured or of the beneficiary. It shall be payable only to a spouse, child, grandchild, parent, brother, or sister, and also during total and permanent disability to the injured person, or to any or all of them. The insurance shall be payable in two hundred and forty equal monthly installments. * * * Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries, but only within the classes herein provided. If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons, within the permitted class of beneficiaries as would under the laws of the state of the residence of the insured, be entitled to his personal property in case of intestacy."

February 12, 1918, Andrae Hugh Elliott applied for insurance pursuant to this and other sections, in the sum of $10,000, designating in his application his mother, Mary Cecelia Elliott, as beneficiary, and certificate No. 1,124,697 was issued to him. April 20, 1918, by an application properly executed, he attempted to change the beneficiary, naming therein Adeline Agnes Elliott as the new beneficiary, and giving her relation to him as that of wife. May 17, 1918, the Bureau of War Risk Insurance acknowledged receipt of this application for change of beneficiary and advised that the records of the Bureau had been marked accordingly and that the change was effective from April 20. A marriage ceremony between the insured and Adeline Manegie, the new wife, was performed in North Carolina, where the insured was then stationed, April 17, 1918. She was at this time legally married to another who was then living and from whom she did not obtain a divorce until the latter part of 1919. The insured had also, on June 6, 1910, been married to one Anna Maguire, and it is claimed that she also is still living and that no divorce had ever been obtained. The plaintiff was born October 5, 1918. No question is made but that the insured is her father, and in his lifetime acknowledged her as his child.

Upon the filing of this bill, the defendant the United States applied for and obtained an order requiring Anna Maguire Elliott, the first wife and widow of the insured, and one Emma Belcher Elliott, another person alleged to have later been married to the insured and from whom he had never been divorced, and the new wife, Adeline M. Elliott, to be made parties defendant. Emma Belcher Elliott does not appear and makes no claim. Anna Maguire Elliott, being insane, appears by her conservator, and has filed an answer and cross-petition asserting her marriage to the insured and that no divorce has ever been granted, and makes claim for the entire proceeds. Adeline M. Elliott appears and answers and waives any claim on her own behalf, but claims the entire proceeds as an alleged trustee for the plaintiff. Mary Cecelia Elliott, the mother of the insured and the original beneficiary, also appears and answers, claiming to be the only beneficiary and entitled to the entire proceeds. The Bureau of War Risk Insurance, having duly considered these several claims, has made a ruling that Mary Cecelia Elliott is the

only person interested in the proceeds and entitled to the monthly installments payable on account thereof.

. [1] Two. preliminary motions are submitted by the United States, which may be briefly disposed of. One is that David. F. Houston, Secretary of the Treasury, is not a proper party defendant and that the cause should be dismissed as to him. This motion is well taken and is sustained. .

[2] The other motion is to transfer this cause to the law side of the court. This motion, when submitted at the hearing, was reserved, and all parties agreed that in the event this court held this action to be legal and not equitable and that it should be so transferred, the case should be submitted to the court without a jury for decision on the evidence to be presented. This motion is not well taken, and is overruled. The relief sought in the original bill is to restrain the payment of the monthly installments to Mary Cecelia Elliott, to declare and establish the right of the plaintiff thereto, and to procure a mandatory injunction to compel payment to plaintiff in accordance with her right as thus established. The order made on motion of the United States, requiring new defendants to be made and requiring them to appear, answer, and assert their several claims, is the equivalent of equitable relief by a bill of interpleader. The affirmative relief sought in the several answers is not for a money judgment, but is, rather, equitable than legal in nature. The action against the United States, authorized by section 405 of the War Risk Insurance Act, obviously includes any form of action, legal or equitable, appropriate to the facts of the case. In my opinion, the issues framed and the relief sought are equitable rather than legal.

The paternity of the plaintiff being conceded, and the insured being at the time of his enlistment and death a resident of Ohio, section 8591, G. C. of Ohio, makes plaintiff a person who is entitled to the insured's personal property in case of intestacy notwithstanding the marriage of plaintiff's father and mother may be absolutely null and void. The fact that Adeline Manegie, the plaintiff's mother, was married and undivorced at the time of her marriage to the insured, makes that marriage null and void, even though the insured's first wife, Anna Maguire Elliott, may not then have been living and undivorced; hence it is unnecessary in this aspect of the case to inquire whether sufficient proof is offered to show that the Anna Maguire Elliott who appears by her conservator is the lawful first wife of the insured. Adeline M. Elliott, the latest wife, it is conceded, is not a person entitled to be designated as a beneficiary under section 402 of the War Risk Insurance Act. The several claimants, therefore, are the plaintiff, the infant child of the insured, and the last wife; the first wife, Anna Maguire Elliott; and the mother and original beneficiary, Mary Cecelia Elliott.

[3] Plaintiff's right rests on the contention that the designation of Adeline M. Elliott, the new wife, as beneficiary, completely revokes and cancels the original designation of Mary Cecelia Elliott as a beneficiary, and that inasmuch as the new beneficiary is not a person within the permitted class, the insured had died without designating any lawful beneficiary, and that the insurance passes to the plaintiff under the

terms of the last sentence of section 402 above quoted. The opposing contention is that the designation of the new wife is only an attempted change of beneficiary, and, being wholly null and void because of her ineligibility to be a beneficiary, is null and void for all purposes, and leaves the original designation in full force and effect. The question thus presented is not free from difficulty, but upon a careful examination of the provisions of the War Risk Insurance Act and an examination of the law relating to beneficial and mutual societies, I am of opinion that the contention last cited is the sound one. Section 402 is the only part of the War Risk Insurance Act pertinent to this question. This section has been amended and re-enacted, but its provisions as above quoted have always been the same. An examination of the other sections seems to me to furnish no aid in construing section 402. My conclusion rests primarily upon the terms of this section, but is supported also by the law as announced and applied in analogous situations arising under the insurance law. The insurance, it is provided by this section, shall be payable only to a spouse, child, grandchild, parent, brother, or sister. The insured, when making application therefor, is obviously expected to name in his application a beneficiary who is within this class. The law as well as the certificate reserves to the insured the right to change beneficiaries without the consent of those previously designated. The law as well as the regulations contemplates only a change of beneficiary and not a surrender and cancellation of the certificate or the making of any new or further contract of insurance. The right reserved is the right to change, not to cancel or revoke. The right to change implies, and of course includes, the right to revoke; but the law seems to restrict the manner and method of thus changing or revoking. The change, while it may be made without the consent of the beneficiary, can only be to another within the classes provided in the act; that is, the right to change, as well as the actual revocation and change, seems to be restricted to a right to designate a new beneficiary within the permitted class. It does not seem to be contemplated that once a certificate is issued and a designation made, the insured may merely cancel or revoke that designation, reserving either a right to make a new designation at some future time or by a last will and testament. Certainly the Bureau of War Risk Insurance would not have recognized an attempted cancellation or revocation except as a result of the designation of a new beneficiary. No regulation has been made permitting the cancellation of a certificate once issued, for the purpose of terminating the contract of insurance or as a means of changing beneficiaries or destroying the rights of an original beneficiary. It seems to me that a change of beneficiary is authorized and permitted only by actually designating a new beneficiary within the eligible class.

[4] If this be true what then is the effect of the later designation of an ineligible person? Is it to be treated as an effective revocation of an originally valid designation, even though it is wholly null and void for the purposes for which it was intended? It does not seem to me that it can have this effect. What the insured did, and all that he did, was to attempt to change beneficiaries. If this attempted change is

null and void and therefore ineffective for the purpose intended, it cannot logically have another and different effect and be valid for another and different purpose. An original valid designation, it seems to me, is not thereby canceled or invalidated.

The general rule of law applicable to beneficial and mutual societies is that, if the attempted change is invalid and ineffective for any reason, the rights of the original beneficiary are not affected and the original designation remains in force. This rule is supported by numerous authorities and has been applied in many cases, including some in which the original certificate designating the beneficiary was surrendered and a new certificate designating an ineligible beneficiary was issued. See 4 Cooley's Briefs on Insurance, 3776; Elsey v. Odd Fellows Mutual Relief Association, 142 Mass. 224, 7 N. E. 844; Smith v. Boston & Main R. R. Relief Association, 168 Mass. 213, 46 N. E. 626; Coyne v. Bowe, 23 App. Div. 261, 48 N. Y. Supp. 937, affirmed 161 N. Y. 633, 57 N. E. 1107; Supreme Council v. McGinness, 59 Ohio St. 531, 53 N. E. 54; Sturges v. Sturges, 126 Ky. 80, 102 S. W. 884, 12 L. R. A. (N. S.) 1014; National Union v. Keefe, 263 Ill. 453, 105 N. E. 319, Ann. Cas. 1915C, 271; Grace v. Northwestern Mutual Relief Association, 87 Wis. 562, 58 N. W. 1041, 41 Am. St. Rep. 62; Williams v. Fletcher, 26 Tex. Civ. App. 85, 62 S. W. 1082. The law as established by these cases is so far the prevailing and the settled rule that it is not a far-fetched inference that the authors of section 402 had it in mind when framing the section and used language which was intended to incorporate that rule in the War Risk Insurance Act.

Certain cases are cited on behalf of plaintiff which, it is said, are in conflict with the cases above cited. Those mainly relied on are Alfsen v. Crouch, 115 Tenn. 352, 89 S. W. 329; Carson v. Bank, 75 Miss. 167, 22 South. 1, 37 L. R. A. 559, 65 Am. St. Rep. 596; Grand Lodge v. Mackey (Tex. Civ. App. decided October 16, 1907) 104 S. W. 907. In addition thereto, I have examined others, including the following: Luhrs v. Supreme Lodge, 54 Hun, 636, 7 N. Y. Supp. 487; Cullin v. Knights of Maccabees, 77 Hun, 6, 28 N. Y. Supp. 276. In some respects the reasoning of these cases conflicts; but, conceding all that may properly be claimed for them, they do not, it seems to me, call for a different conclusion upon the facts of this case.

They may be taken as holding that when the charter and by-laws of a benefit society, or the law under which a mutual insurance company is organized, authorizes and permits the surrender and cancellation of a certificate or contract of insurance and the issue of a new one to a new beneficiary without the consent of the original beneficiary, all the rights of the original eligible beneficiary are terminated, even though the new beneficiary cannot take because not within the eligible class. They are based upon the proposition that when the charter or the law authorizes or permits the insured to cancel or surrender a certificate without the consent of the beneficiary and this is what he does, then all rights arising under the original certificate are terminated. The conflict between these cases and others supporting the prevailing rule

is as to the effect in the given case of the surrender of the certificate and the reissue of a new one. In some of those cited in support of the prevailing rule, a holding is made that if the surrender and cancellation is permitted or is made for the purpose only of changing the beneficiary, it is ineffective as a revocation of the original designation unless a valid new designation is made. The solution of this question is made to turn on a close scrutiny of the terms of the constitution and by-laws of the society or of the statutory law, as applied to the special facts in each case; but in all cases in which it is held that the rights of the original beneficiary are terminated notwithstanding the new beneficiary is ineligible, the holding is based upon the proposition that the original certificate was canceled in a manner authorized and permitted by law or charter.

For this reason, the cases relied on by plaintiff fail in pertinency to the facts of this case. Section 402 does not contemplate a surrender and cancellation of the original certificate, and the insured did not, in fact, attempt to surrender or cancel the original certificate, but merely applied for and obtained a change of beneficiary. Under a charter or law embodying the provisions of section 402 and upon the facts such as are here present, showing an attempt merely to designate a new beneficiary who is ineligible, I find no case which holds that an original valid designation does not remain in force despite the ineffectual effort to change the beneficiary. The difference in the class of cases and in the result reached may be emphasized by reference to certain of the cases. Thus, in Williams v. Fletcher, supra, and Grand Lodge v. Mackey, supra, both decided by the Texas Civil Court of Appeals, it was held in the former that an ineffective designation of a new beneficiary without surrendering and canceling the original certificate did not operate to revoke an originally valid designation, whereas in the later case such a result was held to have followed because the original certificate was surrendered and canceled and a new one issued. The same diverse result appears in Coyne v. Bowe, supra, and Luhrs v. Supreme Lodge, supra, both decided by the Supreme Court of New York.

[5] The contention that the new beneficiary was designated as trustee for the plaintiff, then unborn, is not supported by any evidence. That which is offered tends only to show a recognition by the insured of the plaintiff's relationship to him. The insured merely designated his new wife as beneficiary; he declared no trust in favor of any one, and he cannot be said to have intended anything except that which he did, namely, to make a change of beneficiary. The hardship of plaintiff's situation furnishes no sufficient reason for unsettling the law, a hardship, moreover, which is somewhat tempered by the beneficent provisions of sections 300 and 301 of the same act.

A decree will be entered in conformity to the conclusions herein stated, ascertaining and determining that Mary Cecelia Elliott is the only true beneficiary under certificate 1,124,697, issued to Andrae Hugh Elliott February 12, 1918, and is entitled to the monthly installments payable thereon, as provided by the law, and that her title be quieted, and that plaintiff and all other parties are forever barred from assert-

ing and maintaining any action against her or the United States under and by virtue of said certificate of insurance. No holding is made as to the disposition of any installments remaining unpaid in the event Mary Cecelia Elliott shall die before all shall have become due and payable.

---

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.