MONTGOMERY, J., dissenting.
Action for damages received on the track of the defendant. Plaintiff testified in his own behalf as follows: "Last year I was at Ahoskie, in the employ of the Norfolk and (338) Carolina Railroad Company. Had started to my work. Work carried me to this side of Stony Creek. I was walking along the Wellington and Powellsville Railroad track. Was getting $15 a month. I was taken sick while walking along, and laid down on the track. The first thing I knew the train was on me. I had been drinking. Drank half pint that *Page 251 
day. At this place the Norfolk and Carolina used the Wellington and Powellsville track (narrow gauge). Runs three miles along this track. I was lying across all three of the rails, my head on the crossties just outside of the Norfolk and Carolina rail. It was not customary to run a train on the Wellington and Powellsville on Sunday. Defendant's train struck my legs, and dragged and pushed me along the track about ten feet. I hallooed when it struck me. They stopped. It was in the day time. It was, a straight stretch coming from Ahoskie where I was, two miles from Ahoskie. I was sick three months; hurt in my hip and legs; one of my toes mashed to pieces. I was asleep when the train struck me." On cross-examination: "I have never been paid anything on the release, which is as follows: "Whereas, the undersigned was hurt and injured on the track of the Wellington and Powellsville Railroad Company on or about 19 February, 1899, and claims that the injury was the result of carelessness of said company in running its train, and which carelessness and liability the said company denies: Now, in consideration of ________ dollars this day paid to him in full and final compromise settlement of all claims and rights of action against said company, the said . . . . does hereby acquit, discharge and release said Wellington and Powellsville Railroad Company and its officers, servants and agents from any and all liability to him on account of said injury, and does hereby satisfy and receipt to them in full of all demands on account thereof. Witness my hand and seal, this 10 April, 1899. Thos. (his X mark) Bowden. (Seal.)' I signed this paper before Mr. Copeland, and (339) made my mark to it. I can not read or write. I thought it was a paper that enabled Uncle Eli Williamson to get his money for waiting on me while I was laid up with the injury. This is all I understood about it. I signed it so he could get paid. Did not know the nature of the paper. Eli Williamson had told me before the paper came to me to be signed that that was the only way he could get his money. I was at his house during my sickness. Mr. Copeland, the postmaster, brought the paper to me. No money was paid to me. I was drunk — was drunk sick — when I laid down. Don't know how long I laid there before the train came along. I saw it coming towards me. The train was running pretty fast when it struck me. I think it was as much as half a mile from me when I first saw it. Don't know whether it was a mile. I saw it plain enough to tell that there was no headlight on it. It was just before sunset. I did not get off the track because I was not able. My feet were in middle of track. It was three *Page 252 
months after I was hurt when I signed the paper. I was sitting up. I wanted Eli to be paid, and I signed the paper so he could get his money. He had taken care of me and nursed me during my sickness. Dr. Mitchell attended me as a physician. Defendant's superintendent told me he was going to pay the physician also. I do not know whether he paid him. The paper was not read to me. Nobody was present when it was signed, except Copeland and Uncle Eli. Copeland is the postmaster. Eli is a colored man." (Plaintiff is a colored man.) Defendant moved to dismiss under the statute as in case of nonsuit. Motion allowed. Plaintiff excepted and appealed from the judgment.
From a judgment for the defendant, the plaintiff appealed.
It was error to nonsuit the plaintiff and thereby take from him the right to have the jury pass upon the defense set up by the defendant. Under our system of procedure the tribunal for the trial of disputed allegations of fact is a jury, not a Judge. So important and sacred is the right that it is protected by provisions in both the State and Federal Constitutions. Section 19 of the Bill of Rights (now Art. I) of the State Constitution, says, "The ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable."
When a party upon whom rests the burden of proof fails to introduce any evidence, the Court can direct a verdict against him, or if he is the plaintiff, direct a nonsuit. But the Judge can not direct a verdict in favor of a party upon whom rests the burden of proof, for that would be a finding by the Judge that his evidence is true, which is expressly forbidden by the act of 1796 (now Code, 413) — "No Judge shall give an opinion whether a fact is fully or sufficiently proved, such a matter being the true office and province of the jury." If there is no evidence to the contrary, all the Court can do is to say to the jury that "if they believe the evidence" to find the issue in his favor. Spruill v. Ins. Co.,120 N.C. 141, with cases therein cited and a long line of cases since citing and approving it.
Here the plaintiff introduced evidence tending to show that though there was contributory negligence upon his part, the proximate cause of the injury was the subsequent negligence of the defendant, who had the "last clear chance." The plaintiff *Page 253 
could not have been nonsuited upon that evidence, and it is not even contended that he could be. The defendant set up in defense an alleged release, to which the plaintiff filed a reply denying the same was signed by him for the purpose of a release, alleging fraud and mistake and that no (341) consideration was paid.
The defendant contends that the signing of the release being proven, the burden was upon the plaintiff to prove the matters to impeach it, and that there being no evidence to do this, a nonsuit was proper. But firstly, it is alleged, and the evidence is uncontradicted, that not a penny, nor any consideration whatever, was paid the plaintiff, and indeed the release itself appropriately leaves the consideration blank. It was therefore nudumpactum. But it is said that a seal imports a consideration. This, however, is only a presumption and liable to a rebuttal even where a consideration is recited in a deed solemnly executed and sealed. Barbee v. Barbee,108 N.C. 581; S. c., 109 N.C. 299; Smith v. Arthur,110 N.C. 400; Shaw v. Williams, 100 N.C. 272. In this last case (at page 281) SMITH, C. J., says; "And so every release must be founded upon some consideration, otherwise fraud must be presumed. 2 Dan. Ch. Pr., 766; Story Eq. Pl. sections 796, 797."
Not only is fraud presumed from the absence of consideration, but it is alleged that the plaintiff was "misled and deceived." There is both allegation and proof that the plaintiff is ignorant and unlettered, unable to read or sign his name, that the paper was not read over to him, that he was in physical suffering from his wounds; that the man at whose house he was staying during his confinement from his wounds, told him the paper was to enable him to get his pay from the railroad company for his taking care of plaintiff while wounded, and that, under the impression it was a paper of that kind, he signed it, but he did not know that it was a release of his claim for damages against the company, and that no consideration was ever paid him to give such release. It seems the railroad company was to pay for the plaintiff's board and nursing while (342) wounded, and the doctor, too, for the witness says "the superintendent told me he was going to pay the physician also." It does not appear that even the board and nurse hire have been paid, but if they had been, such payments might be taken into consideration in adjusting a reasonable sum to be paid to plaintiff for his injuries if sustained by the negligence of defendant. Payment of the nurse's bill, had it been shown, would have been no recompense to plaintiff for injuries of the nature here in evidence, and which had then detained him in bed for *Page 254 
three months. This evidence tending to show the signature, made by crossmark, was procured by imposition or mistake, should have been submitted to a jury. The scroll, made, too, by other hands than the plaintiff's following his crossmark, can not have the magical effect to shut off investigation by a jury of the allegation and proof offered to show that the release was not given fairly and knowingly by plaintiff, independently of the presumption of fraud, which arises from the absence of any consideration given plaintiff for his injuries or for the release. That a release is procured from a man who can not read it, without its being read over to him or explained, it itself a suspicious circumstance. It may be that defendant can prove that it was read over to plaintiff, and also that a consideration was paid. An opportunity should be given it to do so.
This case differs from Wright v. R. R., 125 N.C. 1, in that there the issue of fraud was submitted to the jury. The release recited the consideration and the evidence proved it, and there being no evidence of fraud, this Court held that there being not a scintilla of evidence of the affirmative, the Judge should have directed a verdict on that issue against the party alleging the fraud. Nor is this case like Dellinger v. Gillespie, 118 N.C. 737, which properly held that the negligence of a (343) party to a written contract in voluntarily signing it, without reading it, will not permit him to contradict its terms by parol. In that case there was a consideration, the party could read but was too careless to do so, and there was absent all the circumstances here in evidence which tend to show imposition or mistake, trick or device. The Court in that case rests the case on this feature, "it is plain that no deceit was practiced." In the present case there was allegation to the contrary, and the proof offered in support was for the jury to pass upon, and not the Judge.
Error.