WILLIAM KEARNEY, ELIZA GREGORY AND CARRIE RICHARDSON v. JENNIE THOMAS.

(Filed 2 May, 1945.)

**1. Evidence § 3: Constitutional Law § 23—**

The Federal statute implements the Constitution in requiring that full faith and credit be given in each state to the public acts, records and judicial proceedings of every other state, and requires certified copies of records to be admitted in evidence when authenticated as provided by the statute. It is not intended to supplant, nor does it supplant, other modes of proof recognized as competent in the jurisdiction where the exemplification is to be made.

**2. Evidence §§ 3, 34—**

The purpose of certification is to avoid the necessity of bringing original documents from the places where they are kept, or of presenting witnesses who have compared copies with the original—a method still permissible under the common law.

**3. Same—**

Authentication guarantees that the original of the copy genuinely exists, as exemplified, and this is attained by showing: (a) The authority of the person certifying, or that he is the keeper of the record; (b) his present incumbency of the office; and (c) the genuineness of his *signature* or *seal.*

**4. Same—**

Where a marriage license and marriage certificate of record in the Hustings Court of the City of Petersburg, Va., attested by the signature of the Clerk of said court, has attached thereto a certificate of the Presiding judge of said court, under his hand and the seal of said court, that the said Clerk is the duly qualified and commissioned Clerk of said court and that the attestation on the said license and marriage certificate is in due form as provided by the laws of Virginia and made by the proper officer, and in turn the same seal is used by the Clerk of said court in certifying the official character of the Judge, the admission of these documents and certificates in evidence will not be held for error.

**5. Marriage § 5—**

A second or subsequent marriage is presumed legal until the contrary be proven, and the burden of the issue is upon a plaintiff who attempts to establish a property right which is dependent upon the invalidity of such a marriage. The plaintiff cannot recover because of the failure of defendant to carry the burden.

**6. Evidence § 6—**

The laws of evidence do not recognize a presumption on a presumption. The facts upon which a presumption is based must be proved by direct evidence.

**7. Same—**

There is no genuine presumption of the continuance of a particular human life, with a uniform application. The pleadings will show whose duty it is to prove that a particular person was living at a certain time, and, upon his showing the mere fact of life at a preceding date, the court will usually leave it to the jury to say whether he has proved his case.

**8. Trial § 27a: Evidence § 6—**

There is no such thing as a directed verdict while the credibility of the evidence is still a matter for the jury; and it always is for the jury where the demand is for an affirmative finding in favor of the party having the burden, even though the evidence be uncontradicted.

**9. Trial § 32—**

Where no prayer for instruction, as required by G. S., 1-181, appears in the record, this Court cannot indulge in speculation as to its form.

APPEAL by plaintiffs from *Thompson, J.,* at September Term, 1944, of WARREN.

Plaintiffs are children and heirs at law of Alexander Kearney, who died intestate in Vance County in December, 1943.

The said Kearney was first married to Marina Israel some time in the year 1881, and plaintiffs were born to that marriage.

The plaintiffs, as they grew up, removed to other states; and in 1916 or 1917, Marina followed them, and thereafter resided outside of North Carolina.

Some time after Marina left the State, Alex Kearney married Jennie Thomas, the present defendant. That marriage appears to have taken place in Petersburg, Virginia, in January, 1919.

The controversy is over two small tracts of land of about one acre each, one of which was conveyed 3 July, 1922, by John S. Plummer to Alex Kearney as sole grantee, and the other of which was conveyed 20 September, 1921, by Margaret Hooper to "Alex Kearney and Jennie Kearney, man and wife." There was no change of title during the lifetime of Alex Kearney.

The plaintiffs contend that the second marriage to Alex Kearney was bigamous and void because consummated during the lifetime of their mother, the first wife, and in the absence of any divorce. Upon this, they contend that defendant has no dower interest in the tract of land first mentioned and no legal right in the second tract, in which she is, as they claim, mistakenly referred to as the wife. They claim that the entire and unencumbered interest in both tracts descended to them as heirs at law upon the death of their father.

That part of the evidence taken upon the trial pertinent to this appeal may be summarized as follows:

The plaintiffs introduced the license and record relating to the marriage of Alexander Kearney and Marina Israel, showing that the same took place on the first day of June, 1881.

Eliza Gregory, one of the plaintiffs, testified that she had been living in New Jersey since 1902; that her mother left Vance County in 1916 or 1917 and went to live with a sister of the witness, Carrie Richardson, in Virginia. She lived there about six years, and then came to live with the witness in New Jersey; later she lived with William Kearney in Philadelphia until she died at his house in July, 1941.

Carrie Richardson, another plaintiff, testified that she left the home at Henderson when she was about sixteen or seventeen years old and went to New Jersey to live. About 1916, her mother left Henderson and came to live with witness at Williamsburg, Virginia. After about six years, she went to live with Eliza Gregory at Princeton, N. J.; about six years thereafter, she went to live with her son, William Kearney, in Philadelphia, and died there in 1941.

William Kearney testified that his mother, after living with Carrie Richardson and Eliza Gregory, was taken to his home in 1928, and lived there with him until her death, which took place in 1941.

The defendant introduced the deeds covering the lands described in the complaint—one in which Alex Kearney was the sole grantee, and the other in which Alex Kearney and Jennie Kearney, "man and wife," were the grantees.

Edward H. Hendrick testified for the defendant that he had lived in Warrenton all his life and knew Alex Kearney and his wife, Jennie T. Kearney. The reputation in the community was that they were man and wife.

William Carroll testified for defendant that he lived in that community all his life, knew Alex Kearney and his wife, Jennie Kearney, and that the reputation in the community was that Alex and Jennie were man and wife, that they lived there as man and wife.

To the same effect is the testimony of Mattie Arrington, witness for the defendant, James, H. Green, Willis Green, and Ossian Ellis.

Nannie Satterwhite, testifying for the defendant, stated that she lived near Henderson all her life, and was now 69 years old; that she knew Jennie Thomas was married to Alex Kearney, and also knew Marina Kearney and Alex for a long time.

She testified that the general reputation in Henderson was that Marina Kearney was dead when Alex Kearney and Jennie Thomas were married.

Louvina Henderson testified to the same effect.

Defendant thereupon offered a copy of the marriage license, marriage certificate, and certificate of the officiating minister from the records of the Hustings Court of the city of Petersburg. The marriage license purports to be signed by Robert G. Bass, Clerk, as likewise the marriage certificate; and the three items purport to bear the *teste* and *signature* of Robert G. Bass, Clerk, as follows: "A COPY TESTE, ROBERT G. BASS, Clerk." To them is attached the following certificates:

"Commonwealth of Virginia

City of Petersburg

"I, Richard T. Wilson, Presiding Judge of the Hustings or Corporation Court of the City of Petersburg, Commonwealth of Virginia, do hereby certify that Robert G. Bass is the duly qualified and Commissioned Clerk of said Court, and that the attestation appearing on the fact of the copy of marriage license issued in said court on January 1, 1919, to Alex Kearney and Jennie Kearney is in due form, as provided by the laws of the State of Virginia and made by the proper officer, to wit, the said Clerk.

"Witness my hand and seal of the Court this the 25th day of September, 1944.                              RICHARD T. WILSON,
                    Presiding Justice of the Hustings Court of
    (Seal)                      the City of Petersburg, Virginia."

"Commonwealth of Virginia                              Hustings Court

City of Petersburg

"I, Robert G. Bass, Clerk of the Hustings Court of the City of Petersburg, Commonwealth of Virginia, do hereby certify under my hand and the seal of my office, that the said Richard T. Wilson, Presiding Judge of said Court, is duly commissioned and qualified to act as said judge, and is so acting.

"Witness my hand and seal this the 25th day of September, 1944.

                              ROBERT G. BASS,
                    Clerk of the Hustings Court of the City
    (Seal)                          of Petersburg, Virginia."

Plaintiffs excepted to the introduction of this evidence.

Mabel Alston, witness for defendant, testified that upon the death of Alex Kearney, she was called upon by the family, including plaintiffs, to write an obituary, containing in part the history of Alex Kearney. This was to be read at the funeral. "Miss Carrie told me what to put in." This writing was introduced in evidence over plaintiffs' objection, and plaintiffs excepted. This writing was read in evidence. It is as follows:

"Brother Alex Kearney departed this life Dec. 4, 1943, age 76 years. He leaves a wife, two daughters, Mrs. Carrie Richardson of Va., Mrs. Eliza Gregory of N. J., one son, Mr. William Kearney of Pa., one step-son, Mr. Louis Thompson of Henderson, one sister, Mrs. Lou Henderson, two brothers, Jack Kearney and Stephen Kearney, both of Ridgeway, three grandchildrens and a host of friends and relatives to mourn their lost. He was a loving husband and a devoted father.

> "Sleep on father and take your rest
> We loved you but God loved you best.
>            Written by the family."

The plaintiffs moved to strike, and the motion was denied; plaintiffs excepted. Witness testified that the paper was read at the burial.

Jennie Thomas, the defendant, testified that she was married to Alex Kearney 1 January, 1919, at Petersburg, Virginia. She further testified that she had shown Eliza Kearney the certificate of her marriage.

Lewis Thomas, son of Jennie by a former marriage, testified that he knew when his mother and Alex Kearney left to go to Petersburg to be married.

In rebuttal, Eliza testified that she saw Mabel Alston write the obituary; that she tried to dictate it, but Jennie always objected.

At the conclusion of this testimony, the defendant admitted that Alex Kearney and Marina Israel were married in 1881.

The plaintiffs moved for a directed verdict on the evidence, and the motion was denied. Plaintiffs excepted.

Plaintiffs took a number of exceptions to the charge of the court; amongst them the following: That the court failed to state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon in that (a) the judge failed to charge the jury that the marriage relation having been shown and admitted to exist between Alex Kearney and Marina Kearney, the relation will be presumed to continue in the absence of evidence of its dissolution by death or divorce; (b) that the court similarly failed to charge the jury

that even though they found that Alex Kearney and Jennie Thomas acted in good faith at the time of the marriage, that it will be void in the absence of a dissolution of the marriage by death or divorce prior to the date of the ceremony between Kearney and Jennie Thomas; (c) that the court similarly failed to charge the jury that the absence of a person from his or her domicile without being heard from by those who would be expected to hear from him or her, if living, raises a presumption of his or her death at the end of seven years, but not that he or she died at any particular time during this period; (d) that the court erred in failing to charge the jury that while reputation was competent to show that Kearney and Jennie Thomas were married, or as to the exist-ence of a marriage ceremony between them, it was not evidence as to the validity of the said marriage.

Five issues were submitted to the jury, and all of them answered favorably to the defendant, as follows:

"1. Were Alexander, or Alex Kearney and Marina Israel Kearney legally married as alleged in the complaint and amended complaint? Answer: Yes.

"2. If so, are the plaintiffs the only surviving issue of said marriage? Answer: Yes.

"3. Were Alexander or Alex Kearney and Jennie Thomas legally married, as alleged in the answer and amended answer? Answer: Yes.

"4. What interest, if any, does the defendant hold in the lot described in the answer as the 'Margaret Hooper lot'? Answer: "The entire fee simple.

"5. What interest, if any, does the defendant hold in the lot described in the answer as the 'Plummer Lot'? Answer: A dower interest."

Thereupon, the court adjudged that plaintiffs take nothing by their action, and that the defendant owns a dower interest in the lot known as the "Plummer Lot" conveyed to Kearney by John S. Plummer, and that she is, by survivorship, the sole owner in fee of the lot known as the "Hooker Lot," conveyed to Alex and Jennie Kearney, "man and wife." The plaintiffs moved to set aside the verdict for errors committed in the course of the trial, and the motion was denied. Plaintiffs objected and excepted to the signing of the judgment and appealed, assigning errors.

*Gholson & Gholson, Charles W. Williamson, and Julius Banzet for plaintiffs, appellants.*

*Kerr & Kerr for defendant, appellee.*

SEAWELL, J. 1. The appellants excepted to the introduction of the certified copies of the marriage license, record of marriage, and return of the officiating minister, kept, under the Virginia law, amongst the

records of the Hustings Court of the city of Petersburg. The objection is that the signature of the keeper of the record was not under his seal. We might question here whether the Clerk of the Hustings Court kept a seal as keeper of records of this kind. However, that he did keep a seal as clerk of the Hustings Court is obvious from the record.

The appellants point out that the authentication is not in accordance with the Federal statute, Title 28, U. S. C. A., sec. 688. See G. S., Appendix 3.

Had the authentication been in strict compliance with the Federal statute, and had the certified copies been rejected, it would have been error; but since the evidence was received, the situation is quite different. The Federal statute implements the Constitution in requiring that full faith and credit be given in each state to the public acts, records and judicial proceedings of every other state, and requires certified copies of records to be admitted in evidence when authenticated as provided by the statute. It is not intended to supplant, nor does it supplant, other modes of proof recognized as competent in the jurisdiction where the exemplification is to be made. 20 Am. Jur., p. 833, sec. 986.

The whole purpose of certification, as we now understand it, is to avoid the necessity of bringing original documents from the places where they are kept, a matter over which the court would frequently have no power, or of presenting witnesses who had compared copies with the original— a method still permissible under the common law. Certain assurances of genuineness must, however, attend the substitute method, and these have been afforded by providing for certified copies with conventional methods of authentication, which vary with the jurisdiction. It is not universally true that the want of a seal to the signature of the keeper of the records is fatal to the introduction of the certified copy as evidence. The defect may be supplied by a further certificate under seal relating to the same facts.

The purpose of authentication is to guarantee that the original of the copy genuinely exists, as exemplified, and this is attained by showing: (a) The authority of the person certifying, or that he is keeper of the record; (b) his present incumbency of the office; and (c) the genuineness of his *signature* or *seal*. Wigmore, 3rd Ed., sec. 1679.

"By the doctrine of the present exception, the hearsay statement of a higher officer made in the shape of an original certificate may be receivable to evidence the authority, and incumbency, and the seal or *signature* of a lower officer." *Id.*, 1679.

In this instance, these facts are supplied by the certificate of the presiding judge of the Hustings Court (in which the original records are kept) under seal of the court, which is the same seal used by the clerk in certifying the official character of the judge—the seal thus twice

appearing in connection with the certified copies. We think the defect complained of cured by the recitals, under seal, in the second certificate. The admission of the evidence will not be held for reversible error.

2. There is one consideration which goes to the heart of the case before us; that is, whether the burden of the issues submitted to the jury is properly placed on the plaintiffs or on the defendant. Determination of that question will afford a practical solution of nearly all the problems presented in appellants' exceptions to the judge's charge, without further detailed attention.

We are of opinion that when the plaintiff attempts to assert a property right which is dependent upon the invalidity of a marriage, he must, as the attacking party, make good his cause by proof. Upon proof that a marriage ceremony took place, it will be presumed that it was legally performed and resulted in a valid marriage. Chamberlayne, Trial Evidence, p. 432, sec. 475. For some unexplained reason, the trial court placed the burden of establishing the validity of the second marriage upon the defendant—although, of course, this was to the advantage of the plaintiffs and they cannot complain. Perhaps this misconception as to the burden of proof inspired some of the challenges now made to the adequacy of the judge's charge to the jury under G. S., 1-180.

While the burden was upon the plaintiffs to establish the invalidity of the second marriage, it was competent for them to carry that burden by any of the ordinary modes of proof, whether by direct evidence of fact (which the plaintiffs sought to do), or by presumptions recognized by the rules of evidence or established by statute, if there are such; but they could not recover because of a failure of the defendant to carry the burden of proof which does not in law belong to her.

The plaintiffs argue that their case is aided by the presumption of the continuance of a status, or condition, once proved to exist—namely, the first marriage—and that it was the duty of the judge, without special request, to instruct the jury that the first marriage, admitted to have taken place, is presumed to continue until the presumption is overcome by proof contra. This, however, involves another presumption of like character—to wit, the presumption of the continuing life of the wife of the former marriage. Assuming her to be still alive when the second marriage took place, there might be stronger reason to presume the continuance of marriage as against divorce. As a matter of fact, we shall find that the presumption cannot be indulged in either aspect. The laws of evidence do not recognize a presumption on a presumption. The facts upon which a presumption is based must be proved by direct evidence. Chamberlayne, Trial Evidence (Tompkins), 373, sec. 418. Moreover, proof of the second marriage adduced by the defendant, if sufficient to establish it before the jury, raises a presumption of its validity, upon

which property rights growing out of its validity may be based. Trial Evidence, *supra,* page 432, sec. 475. *Gosset v. Gosset,* 112 Ark., 47, 164 S. E., 759; *Hunter v. Hunter,* 111 Calif., 261, 43 Pac., 756; *Turner v. Williams,* 202 Mass., 500, 89 N. E., 110. It is to be noted here that the existence, or fact, of the second marriage was supported not only by reputation and cohabitation, but by the direct evidence of the defendant as to the ceremony of marriage, and by the certified copies challenged by the plaintiffs. Conflicting presumptions usually destroy each other, unless through some policy of the law, or artificial weight given by the statute, the stronger may prevail. However, without burdening the subject with too many technicalities, we quote from Wigmore on Evidence, sec. 2531:

"It is not possible to say that there is a genuine presumption of the continuance of a *particular* human life, with a uniform application. The state of the pleadings will show whose duty it is to prove that a particular person was living at a certain time, and upon his showing the mere fact of life at a preceding date, the court will usually leave it to the jury to say whether he has proved his case."

That principle seems to us sound, and the defendant had the full benefit of it. Whether, upon request, the judge should have charged that such a presumption might be raised on direct proof that the wife of the former marriage still lived, we need not inquire. The weight of authority is against it.

We find in Chamberlayne's Trial Evidence, *supra,* p. 376, sec. 416: "A second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. In such case the presumption of innocence and morality prevail over the presumption of the continuance of the first or former marriage." This statement is so abundantly supported by well considered cases, so consonant with reason, and so consistent with analogous practices, as to justify its adoption. See, also, Jones on Evidence, Civil Cases, sec. 14, and cases cited.

Without attempting further to deal with the mathematical niceties of shifting burdens, as yet not worked out with any degree of satisfaction, it is our opinion that the case was open to the jury upon all the evidence submitted, and the trial court could only have confused them with an unsuccessful attempt to balance mere administrational presumptions, which are, after all, no more than inferences from the evidence.

The burden of proof rested on the plaintiffs, and the evidence on material issues was substantially conflicting. In this situation plaintiffs moved for a directed verdict, which was denied.

Here there is no such thing as a directed verdict while the credibility of the evidence is still a matter for the jury; and it always is for the jury where the demand is for an affirmative finding in favor of the party

having the burden, even though the evidence may be uncontradicted. *Mfg. Co. v. R. R.,* 128 N. C., 280, 38 S. E., 894, and cases cited; McIntosh, N. C. Practice and Procedure, sec. 574.

Where the evidence is contradictory, obviously no instruction can be given, hypothecated on a finding of fact by the jury, which will have the effect of a directed verdict either way. *Boutten v. R. R.,* 128 N. C., 337, 340, 38 S. E., 920; *R. R. v. Lumber Co.,* 185 N. C., 227, 117 S. E., 50; *Porter v. Construction Co.,* 195 N. C., 328, 331, 142 S. E., 27. However, no prayer for instruction, as required by the statute—G. S., 1-181—appears in the record, and we cannot indulge in speculation as to its form. *Hicks v. Nivens,* 210 N. C., 44, 47, 185 S. E., 469.

Appellants, at most, regard the evidence as overwhelmingly in their favor. As to that, we express no opinion. It is sufficient to say that such a condition, if it existed, would not, in this jurisdiction, support the plaintiffs' motion. The case was for the jury, and they have spoken.

We have considered other exceptions not involved in the foregoing discussion, and do not regard them as meritorious.

Upon the whole record, we find

No error.