## PAGE v. UNITED STATES et al.
### No. 6350.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1952.

Decided Jan. 28, 1952.

James J. Sansom, Jr., and M. Hugh Thompson, Durham, N. C., for appellant.

William B. Norton, Jr., Marion, S. C., (W. B. Norton and M. M. Norton, Marion, S. C., on the brief), for appellee Ila Davis.

Bryce R. Holt, U. S. Atty., and R. Kennedy Harris, Asst. U. S. Atty., Greensboro, N. C., on the brief, for appellee United States.

Before SOPER and DOBIE, Circuit Judges, and WEBB, District Judge.

SOPER, Circuit Judge.

This suit was brought by Lellon Page against the United States on a national service life insurance policy in the sum of $7,000 issued to Felton Page who died on September 18, 1944, while a member of the armed services. Lellon Page was named as beneficiary in the policy and claims the proceeds thereof as the widow of the insured. Ila Davis, a sister of the insured, was named as contingent beneficiary in the policy. She was brought into the case and made a party defendant at the instance of the United States because she lays claim to the insurance on the ground that Lellon Page was not validly married to the soldier at the time of his death and was therefore not within the class of persons eligible to receive benefits under the National Service Life Insurance Act, 38 U.S.C.A. § 802(g).

The only question in controversy is whether a marriage ceremony between the insured and Lellon Page, which took place on November 1, 1941 in Durham, North Carolina, resulted in a valid marriage; and this in turn depends upon whether at that time a prior marriage between the insured and Claudia Mae Patterson which took place on June 11, 1926 at Marion, South Carolina, had been terminated by divorce. The case was submitted to a jury in the District Court and at the conclusion of the evidence each claimant moved for a directed verdict in her favor, but the motions were overruled and the jury, in

answer to a specific question, found that the marriage between Page and Claudia Mae Patterson was still in force when Page married the plaintiff on November 1, 1941. Judgment was therefore entered in favor of Ila Davis for the balance due on the policy and this appeal is based on the ground that the evidence was insufficient to support the verdict.

It is conceded that both marriages took place and that both wives survived the insured; and no evidence was offered that the first marriage was terminated by a divorce before the second ceremony was performed. The judge, however, applied the North Carolina Rule established in Kearney v. Thomas, 225 N.C. 156, 33 S.E.2d 871, that there is a presumption of law that a marriage ceremony having taken place, was legally performed and resulted in a valid marriage, and that one who attacks the validity of the marriage has the burden of proving the contrary. Accordingly the jury was instructed that the burden of proof was upon Ila Davis, the sister of the insured, to satisfy them by the greater weight of the evidence that the first marriage was still in effect and had not been dissolved by divorce when the second took place; and that if she failed to do so, they should find the issue in favor of the second wife. No exception to the charge was taken and the appeal is based upon the refusal of the judge to direct a verdict in the plaintiff's favor.

After his first marriage in 1926 Page and his first wife lived together in South Carolina and later moved to North Carolina. Two children were born as the result of this union. In 1934 Page was sent to prison and thereafter the couple did not live together, although after his release both lived in Durham, North Carolina, and saw something of each other, and even after he went into the service he occasionally wrote to his first wife.

On November 1, 1941 Page married the plaintiff in Durham, North Carolina, and lived with her as man and wife until he went into the service. Some time thereafter, his first wife went to live in Norfolk, Virginia, and on March 6, 1942 married one Walter Shields in Virginia. She testi-

fied, however, that she did not bring any suit for divorce against her first husband and had no knowledge or information that any divorce had been granted. She had heard, however, that Page had died but continued to live with Shields after she learned that the report was unfounded. After the death of Page in the army one of his sisters sent her divorce papers to be signed.

The brother of the insured testified that Page came to Durham after his release from prison and that the two of them lived in the same house or in the same neighborhood, and that they saw each other daily; and the brother testified that he had no knowledge of any divorce of the insured from his first wife; that he knew what his brother told him face to face, and that his brother did not get a divorce from his first wife. There were also produced in evidence six certificates, one from the clerk of the court of each of the six counties in which the insured had lived in North Carolina, to the effect that for the period between 1925 and 1941 there was no record or entry of any divorce being granted to Felton Page or to Claudia Mae Patterson Page.

We think that this evidence was sufficient to justify the submission of the issue to the jury. It is objected that the certificates of the clerks of the trial courts of North Carolina had no probative value because under North Carolina procedure it would have been possible for Felton Page to have brought suit for divorce in any one of the other one hundred counties of the state. But we think that the lack of record evidence of any divorce proceeding in any of the counties in which suit for divorce would most likely have been brought, if one had been filed, coupled with the complete lack of information on the subject of divorce on the part of the first wife and on the part of the family of the insured, and coupled with the brother's positive evidence, constituted substantial proof that no divorce had ever taken place.

It is also objected that in a number of jurisdictions in the United States the courts have indicated that ordinary proof is not sufficient to overcome the presumption of the validity of a marriage which

has been performed, but that to establish invalidity there must be plenary proof, consisting of strong, distinct, satisfactory and conclusive evidence. See the cases assembled in the annotations in 34 A.L.R. 464 and 77 A.L.R. 729.

 We confine our attention, however, to the law of North Carolina by which we are bound in this case. In Kearney v. Thomas, 225 N.C. 156, 163, 33 S.E.2d 871, it was expressly stated that while the burden of proof is upon one who attacks the validity of a second marriage, it is competent for him to carry that burden by any of the ordinary modes of proof, whether by direct evidence of fact or by presumptions recognized by the rules of evidence or established by statute. In the case before it the Supreme Court of North Carolina commented upon the claim of the appellants that the evidence was overwhelmingly in their favor, but as to that the court expressed no opinion, stating that it was sufficient to say that such a condition, if it existed, would not in North Carolina support the appellants' motion for a directed verdict. The court held, since the evidence was conflicting, the question was one for the jury.

The judgment of the District Court is Affirmed.