**BATTS v. UNITED STATES et al.**
**Civ. No. 469.**

United States District Court,
E. D. North Carolina,
Wilmington Division.

March 27, 1954.

Rodgers & Rodgers, Wilmington, N. C., for plaintiff.

Johnson & Johnson, Warsaw, N. C., Earlie C. Sanderson, Wallace, N. C., for Ethel M. Batts.

Stevens, Burgwin & McGhee, Wilmington, N. C., Julian T. Gaskill, U. S. Atty., Goldsboro, N. C., for Nellie B. Moore.

GILLIAM, District Judge.

This controversy involves a determination of the question of which one or more of three claimants should receive the unpaid balances admittedly due by the United States on two National Service Life Insurance policies issued to Edward D. Batts, deceased insured.

The first policy, certificate No. N 7 222 580 for $5,000, was issued effective December 1, 1942. Nellie B. Moore was designated as principal beneficiary, and there was no designation of a contingent beneficiary. On December 6, 1944, the

insured requested on Veterans' Administration Form 336 (Change of Beneficiary) that all prior designations be cancelled regarding this policy, and that "Beatrice Batts or surviving children" be substituted beneficiaries. Beatrice Batts is the same person as Metta B. Batts, plaintiff.

The second policy, certificate No. N 18 297 230 for $5,000, was issued effective February 1, 1945, and Metta B. Batts, described as "wife", was designated as principal beneficiary with Andrew G. Batts, father, as contingent beneficiary.

Both policies were in full force and effect when the insured was killed in action, July 30, 1945. He died leaving no children surviving.

The plaintiff filed a claim under both policies of insurance in the Veterans' Administration on December 6, 1945. These claims were disallowed, and instead the Veterans' Administration authorized payments as follows: to Ethel M. Batts under policy No. N 7 222 580; and to Andrew G. Batts under policy No. N 18 297 230. And pursuant to those authorizations Ethel M. Batts received payments aggregating $2,347.10 prior to the bringing of this action; and Andrew G. Batts received payments aggregating $3,595.20 prior to his death, which preceded this action. Thus, there are outstanding balances on the two policies of $2,652.90 and $1,404.80, respectively.

Both policies matured prior to August 1, 1946. Therefore, the proceeds are payable only to a member or members of the permitted class having priority, either by designation of the insured as contemplated by 38 U.S.C.A. § 802(g), or by devolution as provided in (h) and (i) of that same section. Whether the plaintiff was within the permitted class of beneficiaries so as to be able to take by designation depends upon her status as the legal widow of the insured at the time of his death; and that question is material in determining the proper disposition of proceeds in both policies. Each of the three defendants claims that the plaintiff is not the lawful widow of the insured.

Edward D. Batts and Ethel M. Batts were lawfully married on May 13, 1936, in Duplin County, N. C.; they lived in Duplin County as man and wife for about four years, when Edward abandoned Ethel and went to Wilmington, N. C.; New Hanover County, and established residence. On October 4, 1941, a second marriage ceremony was consummated in Marion County, South Carolina, (less than 100 miles from Wilmington) between Edward D. Batts and Metta B. Batts, and this purported marriage was legal and valid unless it be found as a fact that the prior marriage to Ethel M. Batts had not been theretofore dissolved by divorce. About two years after the abandonment, Edward Batts visited Ethel Batts at her home in Duplin County, where she resided at all times from the abandonment to the time of trial, and at the time of this visit no mention was made of a divorce. Ethel never brought an action for divorce and no summons or other papers in a divorce action were ever served upon her. Metta Batts had no knowledge of a divorce obtained by Edward Batts, and, as a matter of fact, did not know of the prior marriage until some time after the marriage ceremony between her and Edward Batts was performed. Nellie B. Moore, insured's sister, had no knowledge of a divorce. Edward Batts lived in Wilmington for the entire period from his abandonment of Ethel Batts until he entered the service in October, 1942; and the trip from his home there into South Carolina was for the sole purpose of having the marriage ceremony performed between him and Metta Batts. The records of New Hanover and Duplin Counties disclosed no record of a divorce obtained by Edward Batts from Ethel Batts.

The question is presented whether the above facts are sufficient to support a finding that the marriage between Ethel Batts and Edward Batts had not been dissolved by divorce before the marriage ceremony with Metta Batts. The

North Carolina law controls. North Carolina, in accord with most, perhaps all other jurisdictions, has adopted the rule that where a marriage ceremony is shown there is a strong presumption of law that the ceremony was legally performed and resulted in a valid marriage; that one who attacks the validity of the marriage has the burden of proving the contrary; that proof of a prior marriage alone is not sufficient to overcome such presumption as to the second marriage, but that in such case the attacking party has the burden of proving that the first marriage was still in effect (in this case, that it had not been dissolved by divorce) at the time of the second wedding ceremony. However, the North Carolina Court has declared that this burden may be carried by any of the ordinary modes of proof. In Kearney v. Thomas, 225 N.C. 156, 163, 33 S.E.2d 871, 876, it is declared: "While the burden was upon the plaintiffs to establish the invalidity of the second marriage, it was competent for them to carry that burden by any of the ordinary modes of proof, whether by direct evidence of fact * * *, or by presumptions recognized by the rules of evidence or established by statute * * *." This rule was applied by the Court of Appeals of this Circuit in Page v. United States, 193 F.2d 936. The opinion of Judge Soper contains this statement at page 937 of 193 F.2d: "We think that this evidence was sufficient to justify the submission of the issue to the jury. It is objected that the certificates of the clerks of the trial courts of North Carolina had no probative value because under North Carolina procedure it would have been possible for Felton Page to have brought suit for divorce in any one of the other one hundred counties of the state. But we think that the lack of record evidence of any divorce proceeding in any of the counties in which suit for divorce would most likely have been brought, if one had been filed, coupled with the complete lack of information on the subject of divorce on the part of the first wife and on the part of the

family of the insured, and coupled with the brother's positive evidence, constituted substantial proof that no divorce had ever taken place.

"It is also objected that in a number of jurisdictions in the United States the courts have indicated that ordinary proof is not sufficient to overcome the presumption of the validity of a marriage which has been performed, but that to establish invalidity there must be plenary proof, consisting of strong, distinct, satisfactory and conclusive evidence. See the cases assembled in the annotations in 34 A.L.R. 464 and 77 A.L.R. 729.

"We confine our attention, however, to the law of North Carolina by which we are bound in this case. In Kearney v. Thomas, 225 N.C. 156, 163, 33 S.E.2d 871, it was expressly stated that while the burden of proof is upon one who attacks the validity of a second marriage, it is competent for him to carry that burden by any of the ordinary modes of proof, whether by direct evidence of fact or by presumptions recognized by the rules of evidence or established by statute. * * *"

■ In my opinion, the evidence here is likewise sufficient to raise a jury question, and, sitting as a jury, the Court finds as a fact that the marriage between Edward and Ethel Batts was never dissolved by divorce. It follows that the second so-called marriage was bigamous, and, therefore, void under North Carolina law. It is true that in this case there is no positive evidence such as that of the brother in the Page case who testified that he knew what his brother told him face to face and that his brother did not get a divorce from his first wife; even so, it appears to me that the evidence before me is ample and sufficient to establish the invalidity of the second marriage under the North Carolina law.

The uncontradicted evidence to the effect that Ethel Batts did not sue for divorce and was not served in any action by Edward Batts, alone, almost conclusively establishes it as a fact that no

divorce was ever obtained. It is true that North Carolina permits service by publication in divorce cases, but only in a case where it appears to the satisfaction of the Court by affidavit that the defendant "cannot, after due diligence, be found in the State". G.S.N.C. § 1–98. North Carolina law also provides that a divorce action must be tried in the county in which the plaintiff or defendant resides. § 50–3. Edward Batts resided in New Hanover County and Ethel Batts resided in Duplin County. The proof is that a divorce was granted in neither. It does not follow that a judgment of divorce in any other county was void, as generally speaking improper venue must be taken advantage of by answer. But no plausible reason appears for the suggestion that a divorce action was brought in some other county. Assuming the highly improbable, that a divorce action was brought and concluded in some other county in North Carolina, service of summons by publication could not have been obtained unless the plaintiff in the action, Edward Batts, had satisfied the Court by affidavit that the defendant, Ethel Batts, could not "after due diligence, be found in the State" of North Carolina. She was residing in Duplin County where she resided all her life. If Edward Batts satisfied any court that after due diligence she could not be found in North Carolina, he perpetrated a fraud on the court, because he must have known that she was in Duplin County, where she was when he left her and where she had always lived. It may be that such procedure did not invalidate a divorce judgment if one was obtained upon service by publication, but why should we indulge in such presumption? A much more reasonable presumption is that, if Edward Batts had decided upon divorce before his second marriage, he would have brought such action where he was residing. After all, he was entitled to his divorce under North Carolina law after two years separation.

▪ For the above reasons, it is the conclusion of this Court that Ethel Batts is the legal widow of the insured; that Metta B. Batts is not the legal widow; and that Metta B. Batts is not entitled to any of the proceeds from either of the policies here in question. 38 U.S.C.A. § 802(g).

▪ Now, inasmuch as the plaintiff may take nothing, it results that the proceeds of policy No. N 18 297 230 (the second policy) must be disposed of according to Sections (h) (3) and (i), for the only contingent beneficiary, Andrew G. Batts, is now dead. Hence, the true and lawful widow of the insured, Ethel M. Batts, is entitled to the balance due under that policy, $1,404.80, subject to set-off.

But the determination that the plaintiff is not the lawful widow of the insured does not, of itself, settle the dispute as to which claimant is entitled to the proceeds, or the balance thereof, under policy No. N 7 222 580 (the first policy). For the question arises as to whether the attempted designation of Metta B. Batts operates to nullify the original designation of Nellie B. Moore. If that original designation was thus nullified, then the policy proceeds are due the widow of the insured, Section 802(h) (3) and (i), as decided by the Veteran's Administration and here contended by the United States. But if the attempted substitution of an ineligible beneficiary did not operate to nullify the designation of Nellie B. Moore, then it would appear that Nellie B. Moore is entitled to the full face amount of the policy, $5,000.

▪ It seems to me, and I hold, that the act of the insured in attempting to designate an ineligible beneficiary, Metta Batts, and therein cancelling the original designation, does not automatically nullify the original designation and that, therefore, the sister, Nellie B. Moore, may be entitled to the proceeds of the policy. Such holding seems logical and in line with the rule generally accepted. In 29 Am.Jur., p. 990, it is stated: "Although there is some contrary authority in regard to benefit certificates,

it is generally held that where an attempt to change the beneficiary in a life insurance contract has been unsuccessful, the prior beneficiary is entitled to the proceeds of the policy * * *."

This holding is upheld in at least two cases in the United States Courts, Elliott v. United States, D.C., 271 F. 1001, which arose under the former War Risk Insurance Act, and Lincoln Bank & Trust Co. v. United States, D.C., 71 F.Supp. 745, which arose under the existing National Service Life Insurance Act. In the Elliott case it was held that where an applicant for war risk insurance had properly designated his mother as beneficiary, a subsequent designation by him of a wife, which was void because both the soldier and the designated wife were then married to others, does not have the effect of nullifying the designation of the mother as the beneficiary. The Court said [271 F. 1005]: "It seems to me a change of beneficiary is authorized and permitted only by actually designating a new beneficiary within the eligible class. If this be true what then is the effect of the later designation of an ineligible person? Is it to be treated as an effective revocation of an originally valid designation, even though it is wholly null and void for the purposes for which it was intended? It does not seem to me that it can have this effect."

In the Lincoln Bank case these were the facts: A soldier's mother had been designated as beneficiary in a National Service Life Insurance certificate and his sister as contingent beneficiary; insured wrote his mother that in event of his death, " 'I want you to divide this insurance equally betwen Bobby Heitz (my son) and Carrie Lee Bunch [a sweetheart]' " [71 F.Supp. 746]; the mother died before any payments were made and until suit was brought payments were made to his sister, the contingent beneficiary. The Court held: "The letter written by the soldier to his mother * * * is a 'designation signed by the insured' ", and that the change of beneficiary as to the son was complete and effective. As to the sweetheart's claim,

the Court said: "The attempt to name Carrie Lee Bunch as a beneficiary fails because she is not within any of the classes enumerated in § 802(g) of the Act. The original designation remains in force as to the one-half of the proceeds of the policy attempted to be transferred to Carrie Lee Bunch."

■ Having found that the attempted change of beneficiary did not automatically nullify the original designation, we next reach the inquiry as to whether, aside from automatic nullification, the original designation was not otherwise effectively nullified.

■ It has been said that the designation of a beneficiary, or the cancellation or revocation of a designation already made, constitutes what is analogous to a testamentary act; and the cardinal rule in the construction of testamentary matters is that the intention of the testator must be ascertained and honored, if possible. I believe that analogy is appropriate.

But aside from the cardinal rules of construction applicable to testamentary action, and appropriate analogies, a review of the comparatively recent decisions of the Federal Courts directly involving National Service Life Insurance, shows those courts to be consistently emphasizing adherence to the intention of a deceased insured in the matter of disposition of the proceeds of his Government insurance. In the case of Roberts v. United States, 157 F.2d 906, at page 909, the Court of Appeals for this Circuit said in its decision: "We are in accord with the views expressed in Bradley v. United States, 10 Cir., 143 F.2d 573, where it is said that in war risk insurance cases involving change of beneficiary the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured". See also, Meisner v. United States, D.C., 295 F. 866; Norris v. Norris, 5 Cir., 145 F.2d 99; Horsman v. United States, D. C., 68 F.Supp. 522.

Clearly, by comparison of the cases, Elliott v. United States, supra, Lincoln

Bank & Trust Co. v. United States, supra, and Roberts v. United States, supra, there is no rule of thumb for the disposition of insurance proceeds where the insured has unsuccessfully attempted to effect a change of beneficiary. Each case must rest on its own peculiar facts, the controlling factor being the ascertainment of the intent of the insured.

█ In the instant case this Court has no difficulty in ascertaining the intention of the insured, Edward Batts. Edward Batts, being first married to Ethel Batts, did not in either policy designate her as principal or contingent beneficiary; and no change of events prompted the insured to favor Ethel Batts by seeking a change of beneficiary for her sake. Neither does there appear to this Court, from the record, any circumstance that might possibly be interpreted as indicative of a change of heart towards Ethel Batts. It is true, of course, that the insured attempted to cancel his designation of his sister, Nellie B. Moore, in favor of his second wife, Metta B. Batts; but that attempted change does not indicate to this Court that the insured, at that time or thereafter, was motivated by ill-will towards his sister. Rather, the attempted change, together with the fact that Metta B. Batts was named as principal beneficiary in the second policy, simply reveals that the second wife had attained the primary position as the object of the insured's affection. And there is nothing to substantiate a claim that such attainment of position by Metta B. Batts was attended by a shifting of position among others.

Finally, in opposition to a finding in favor of Nellie B. Moore, the Government cites the case of Riley v. United States, D.C., 116 F.Supp. 155, for the proposition that one who stands "idly by" for a period of three years should be deemed to have acquiesced in the original decision which resulted in the payment to the wrong party. In this, too, the Court disagrees.

The facts in this regard are as follows: On October 10, 1945, Nellie B. Moore wrote to the Veterans' Administration as follows: "This is to inform you that I had word that Daniel Edward Batts was missing in action July 30, 1945. I am wondering what about the policy that I have the certificate No. N 7 222 580. Please let me hear from you all soon." On November 11, 1945, Nellie B. Moore wrote again, saying, among other things: "I have (written) you all one time about this policy. I just would like to hear from you please." Once more, Nellie B. Moore wrote on January 7, 1946, saying: "I am writing you again about the policy. * * * I am still holding the policy until I hear from you all. * * * Let me hear from you all please."

On January 18, 1946, Nellie B. Moore was written the following on behalf of the Chief of Life Insurance Claims Division: "This is in reference to your letter of November 7, 1945. In certificate N 7 222 580, that you have, the insured on December 6, 1944, changed the beneficiary from you to Beatrice Batts, wife." Thus, Nellie B. Moore's inquiry was summarily dismissed, without so much as advising her that she may file a formal claim or appeal from the disposition of the case.

Thereafter, on March 4, 1946, Nellie B. Moore was again written on behalf of the Chief of the Life Insurance Claims Division. In this letter there was recited the finding of new evidence regarding the first marriage of the insured; and the letter continued as follows: "Before a settlement of the insurance can be made in this case, it will be necessary to furnish this office with a certified copy of the former marriage record of the insured, and also to show whether or not that marriage has been dissolved by either divorce proceedings or by the death of the former wife before the marriage to Beatrice Batts. In case the insured had not been legally divorced from his former wife and that she was living at the time of his marriage to Beatrice Batts, the attempted change of beneficiary would have no effect for the reason that Beatrice Batts' marriage to the in-

sured, not being legal, would prevent her from coming within the permitted classes of beneficiaries."

Without deciding whether the letters of Nellie B. Moore were sufficient to constitute a claim within the language of the statute, clearly, the answer of the Government, as amended by its letter of March 4, 1946, was far from an unequivocal denial of rights, setting out an adverse disposition of the insurance proceeds. On the other hand, the language of the letter was rather favorable to Nellie B. Moore, especially in that she was unaware of any proceeding whereby her brother was divorced from Ethel Batts and she was certain that Ethel Batts was living at the time of the second marriage. Above all, it cannot be said that Nellie B. Moore acquiesced in an adverse ruling; for the file of the Veterans' Administration, which is a part of the record, reveals that she was never advised of the Administration's views or holdings subsequent to the letter of March 4; and that letter spoke of things that must be furnished "\* \* \* before a settlement of the insurance can be made \* \* \*."

In conclusion, it is the view of this Court that Metta B. Batts is not the lawful widow of the insured; that the sum of $2,347.10 heretofore given by the Veterans' Administration to Ethel M. Batts was an erroneous disposition and that Nellie B. Moore, the original beneficiary of policy No. 7 222 580, is now entitled to the full face amount of that policy, $5,000; that the balance of the proceeds from policy No. N 18 297 230, in the amount of $1,404.80, is due Ethel M. Batts, but subject to be set off by the $2,347.10 which was earlier erroneously paid to her under policy No. N 7 222 580.

The United States, in matters of this kind, is not liable for interest. United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887.

The United States Attorney will prepare a judgment in accordance with this memorandum.