Edna **DIXON**

v.

John **GARDNER**, Secretary of Health, Education and Welfare.

**Civ. A. No. 68-67.**

United States District Court
E. D. Pennsylvania.
July 15, 1969.

Herman Blumenthal, Philadelphia, Pa., for plaintiff.

Merna B. Marshall, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

LUONGO, District Judge.

Before the court are plaintiff's and defendant's motions for summary judgment. Plaintiff brought suit in this court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides for judicial review of final decisions of the Secretary of Health, Education and Welfare. The only issue before the court is whether the final decision of the Secretary is supported by substantial evidence. If it is, his decision is binding on this court.

Earnest Dixon, the wage earner, died in 1961. In the same year the Social Security Administration began paying widow's benefits under § 202(e) of the Social Security Act to Sally Brown Dixon. In 1965 plaintiff, Edna Dixon, applied for the same benefits, claiming to be the widow of the wage earner. This application was denied. The disallowance was affirmed after reconsideration. Thereafter a hearing was held. The hearing examiner found against plaintiff and the hearing examiner's decision was affirmed by the Appeals Council of the Social Security Administration. This constitutes the final decision of the Secretary of Health, Education and Welfare.

The facts surrounding the claim are these:

Earnest Dixon ceremonially married plaintiff (hereinafter referred to as "claimant" or "first wife"[1]) in North Carolina in 1924. They lived together in Chadbourn, North Carolina until 1934. In the fall of 1934 they separated and claimant moved to Philadelphia, Pennsylvania where she has since resided. After the separation, claimant saw the wage earner twice, at funerals in North Carolina in 1936 and 1950. Mr. Dixon's whereabouts from 1934 to 1944 have not been established with certainty, but there is evidence tending to indicate that Mr. Dixon lived in either Laurin-

---

1. In this opinion, the terms "first wife" and "second wife" are used solely for convenience, referring only to the chrono-logical order of the relationships, and not as indicating that two valid marriages were contracted.

burg or Wilmington, North Carolina during this period. In 1944 Mr. Dixon traveled with Sally Brown (hereafter sometimes referred to as "second wife") from North Carolina to South Carolina where they were ceremonially married. They returned to North Carolina immediately after the wedding and lived together in Laurinburg, North Carolina until Mr. Dixon's death in 1961.

The Secretary was confronted with two recorded ceremonial marriages. Under the Social Security Act the Secretary was bound to find that claimant, the "first wife," was the widow of Mr. Dixon if the courts of North Carolina, the state in which Mr. Dixon was domiciled at the time of his death, would have found that their marriage was valid and subsisting at the time of his death. Section 216(h) (1) (A), 42 U.S. C. § 416(h) (1) (A).

There is a presumption in the law of North Carolina that a ceremonial marriage results in a valid marriage. In attacking the marriage of Mr. Dixon and Sally Brown Dixon, the "second wife," claimant has the burden of proving its invalidity and must meet this burden with proof that her prior marriage to Mr. Dixon was subsisting at the time of the subsequent marriage. Proof of the prior marriage alone is not sufficient to overcome the presumption of validity of the subsequent marriage. Kearny v. Thomas, 225 N.C. 156, 33 S. E.2d 871 (1945). However, North Carolina does not require conclusive proof to overcome this presumption. "[O]rdinary modes of proof, whether by direct evidence of fact * * * or by presumptions recognized by the rules of evidence or established by statute" are sufficient to overcome this presumption. Kearny v. Thomas, 225 N.C. at 163, 33 S.E.2d at 876.

Claimant submitted to the hearing examiner the following evidence to prove that her marriage to Mr. Dixon had not terminated by divorce and was still in effect at the time of Mr. Dixon's subsequent marriage: (1) her uncontradicted testimony that (a) she had not brought suit for divorce against Mr. Dixon and (b) she had not been served with papers in any action for divorce brought against her; (2) the testimony of her first cousin whose residence was near Chadbourn that he had never heard of a divorce between claimant and Mr. Dixon; (3) a letter from an aunt of Mr. Dixon's stating that there had never been a divorce; (4) letters from the Superior Court Clerks of four counties in North Carolina where Mr. Dixon was thought to have resided after 1934, each stating that his county had no record of such divorce; (5) a letter from a lifelong friend of claimant's stating that there had been no divorce.

The Secretary concluded that the foregoing was insufficient to overcome the presumption of validity of the subsequent marriage. His decision turns primarily upon plaintiff's inability to "firmly" establish Mr. Dixon's whereabouts from 1934 to 1944.[2] The Secretary agreed with the hearing examiner that Mr. Dixon "may have lived elsewhere (than the four counties) and may have obtained the divorce in another county or state." (Parens. added, Tr. 6) The Secretary buttressed this observation with Mr. Dixon's earnings record which disclosed that from 1937 through 1944 Mr. Dixon worked for employers with addresses in Chattanooga, Tenn., Chicago, Ill., Atlanta and Augusta, Ga., Union and Sumter, S. C., and in Dunn, Wilmington, Greensboro, Lumberton, Maxton and Laurinburg, N. C. The Secretary apparently regarded each of these places of employment as a place where Mr. Dixon might have instituted proceedings for divorce. Claimant testified that the Social Security Board asked her to get all the information she could to show no divorce (Tr. 15) but it did not reveal to her the information as

---

2. The hearing examiner and the Appeals Board considered significant claimant's testimony that when she saw the wage earner in 1950 and told him that she was still his wife, he laughed.

to the various places where Mr. Dixon worked between 1937 and 1944. That information was obtained from the earnings record which was in the sole possession of the Social Security Administration. Concededly claimant was not familiar with the comings and goings of wage earner after their separation. Without the information upon which the Secretary now relies as potential places of divorce, claimant was saddled with the virtually impossible task of establishing the negative, i. e. that no divorce had been obtained in any county of any of the States and perhaps some foreign countries as well. If the Secretary intended to rely on the information in his possession as establishing other counties where a divorce might have been granted, claimant should have been given the opportunity to introduce evidence that in fact no divorce had been granted in those counties.

When balanced against the evidence produced by claimant, was the record of the subsequent marriage substantial evidence upon which the Secretary could conclude that claimant had not proved that she had not been divorced? In other words, on the evidence contained in this record would the courts of North Carolina have concluded that claimant's marriage was no longer in effect at the time of the subsequent marriage? On substantially similar facts, two federal courts interpreting North Carolina law concluded that the moving party had met its burden of proving that the "first marriage" was still in effect at the time the "second marriage" was contracted. Both cases involved the determination of which of two women was the wife of the insured, and therefore the beneficiary, under a National Service Life policy.

In Page v. United States, 193 F.2d 936 (4th Cir. 1952), the insured was first married in 1926. He and his first wife separated in 1934 and he married the plaintiff (second wife) in 1941. They lived together until 1942 when the insured entered the service, where he was killed. The first wife testified that she neither sued for divorce nor had she any knowledge that a divorce had been granted. The insured's brother testified that he lived near the insured for a time between 1934 and 1941, that he had no knowledge of any divorce and that the insured had told him that he had not gotten a divorce. In addition certificates were produced from the clerks of court of six counties where the insured had resided, stating that there was no record of divorce in those counties between 1925 and 1941. The trial judge instructed the jury that the burden was on defendant first wife to show that the first marriage had not terminated by the time the second marriage was entered into. The jury found for the defendant first wife. The Circuit Court affirmed, stating that the lack of record evidence of divorce "in any of the counties in which suit for divorce *would most likely had been brought, if one had been filed,*" coupled with the above mentioned testimony, constituted substantial proof of no divorce. *Page, supra,* at 937 (emphasis added).

In Batts v. United States, 120 F.Supp. 26 (E.D.N.C.1954) the Veterans Administration awarded payments to the insured's first wife as beneficiary of a National Service Life policy. The insured was first married in 1936 in North Carolina. Four years later he abandoned his first wife and in 1941 a marriage ceremony was performed in South Carolina between the insured and a second woman, the plaintiff. The evidence showed (1) no action for divorce was brought by the first wife and no papers in a divorce action were filed against her, (2) no knowledge on the part of the second wife of a prior marriage or divorce, (3) records of the only two counties where the insured and his first wife had resided during their marriage and after their separation, and (4) no knowledge of divorce between the insured and his first wife on the part of the insured's sister. The court as fact finder concluded that the first wife had satisfied her burden of proof as to the continued existence of the first mar-

riage and found her to be the legal widow of the insured.

The teaching of *Page* and *Batts* is that evidence of the kind and quality produced by claimant in the instant action is, at the least, substantial evidence that the first marriage was valid and subsisting. In the face of such substantial evidence, the presumption of the validity of the second marriage must fall, and with it falls virtually all that the Secretary relies on to deny the claim of the first wife. The Secretary's finding is not supported by substantial evidence and must be set aside. It would appear appropriate then, to grant plaintiff's motion for summary judgment in her favor, but since this record discloses that the Secretary had information concerning other counties where the wage earner worked and *might* have obtained a divorce from plaintiff, opportunity will be afforded to the *Secretary* to supplement the record to establish whether in fact wage earner obtained a divorce in any such counties.

The record will be remanded to the Secretary to proceed in accordance with this Opinion.