MARTIN L. TAYLOR v. MARGIE V. TAYLOR

No. 139A87

(Filed 2 December 1987)

1. Husband and Wife § 12— separation agreements—G.S. § 31A-1(b)(6) inapplicable

N.C.G.S. § 31A-1(b)(6) is inapplicable to separation agreements entered into by parties contemplating a separation or divorce from a valid marriage.

2. Husband and Wife § 12; Bigamy § 1— separation agreement—termination of support on bigamous remarriage

The trial court correctly terminated plaintiff's obligation to pay alimony under a separation agreement where the agreement provided support until defendant's death or remarriage and defendant remarried without obtaining a divorce from plaintiff. Even though defendant's remarriage was *void ab initio*, defendant was estopped to deny that she was remarried as a defense to this action.

APPEAL by defendant from the decision of a divided panel of the Court of Appeals, 84 N.C. App. 391, 352 S.E. 2d 918 (1987), affirming judgment for the plaintiff entered by *Jones, J.,* at the 16 January 1986 Session of District Court, WAYNE County. Heard in the Supreme Court 11 November 1987.

*Cecil P. Merritt, for plaintiff-appellee.*

*Hulse & Hulse, by B. Geoffrey Hulse, for defendant-appellant.*

FRYE, Justice.

The sole question before this Court is whether the bigamous marriage of defendant bars further spousal support provided by a separation agreement. The Court of Appeals held that it does, and we affirm, although on different grounds.

The appellee, Martin L. Taylor, and the appellant, Margie V. Taylor, were married on 20 February 1961 and separated on 5 October 1984, at which time they entered into a written separation agreement. On 13 June 1985, plaintiff filed a complaint seeking a rescission of the separation agreement, alleging, *inter alia,* that defendant had substantially breached the terms of the agreement. On 16 September 1985, defendant filed an answer. On 21 November 1985, plaintiff filed a supplementary complaint alleging that defendant's remarriage terminated her rights to receive support

Taylor v. Taylor

from plaintiff under the separation agreement. On 16 January 1986, the day of trial, defendant filed a counterclaim asking for specific performance of the parties' separation agreement. The trial judge made the following pertinent findings of fact:

4. The parties executed a written separation agreement on October 5, 1984, which provides in pertinent part in Paragraph 2 thereof, "Husband shall pay to Wife for her support and for support of the children the sum of ONE THOUSAND DOLLARS ($1,000.00) per month for one year, the payments beginning on October 10, 1984 and ending on September 10, 1985; thereafter, Wife shall receive one-half of the retirement pay of the Husband (the retirement pay at this time is EIGHT HUNDRED TWENTY-SEVEN AND 77/100 ($827.77) per month) and shall receive one-half of said retirement pay as it may increase or decrease until her remarriage or death."

. . .

6. The Plaintiff paid to the Defendant the sum of ONE THOUSAND DOLLARS ($1,000.00) per month through and including the month of May, 1985, pursuant to the terms of the separation agreement.

7. On April 8, 1985, the Defendant applied for a license to marry George Dwight Davis at Dillon, South Carolina, at 5:25 p.m. She subsequently went with George Dwight Davis to Lumberton, North Carolina where they registered at Motel 6 and spent the night together and then returned to Dillon, South Carolina on April 9, 1985.

8. On April 9, 1985 at 5:25 p.m., the Defendant participated in a marriage ceremony with George Dwight Davis at Dillon, South Carolina and a License and Certificate for Marriage was duly issued to them by the State of South Carolina.

. . .

11. The Plaintiff, Martin L. Taylor, testified that he was married to Margie V. Taylor on April 9, 1985; Margie V. Taylor testified that she has not divorced Martin L. Taylor.

12. Thereafter, the Defendant lived from time to time with George Dwight Davis in the State of Florida and has re-

ceived some support from George Dwight Davis since April 9, 1985.

Pertinent to this appeal, the trial judge made the following conclusion of law:

> 1. The obligation of the Plaintiff to pay support for the Defendant as provided in Paragraph 2 of the separation agreement between the parties dated October 5, 1984 was terminated upon the marriage ceremony of the Defendant on April 9, 1985 at Dillon, South Carolina.

Accordingly, the trial court entered a judgment for plaintiff relieving him of any support obligations he had pursuant to the parties' separation agreement. On appeal to the North Carolina Court of Appeals, defendant contended the trial court erred in allowing evidence regarding the bigamous marriage ceremony since bigamous marriages in North Carolina are *void ab initio* and may be impeached at any time. Because a bigamous marriage is void, defendant argued, the trial court erred in holding that the bigamous marriage was a remarriage, thus barring defendant's right to support as contemplated by the parties under the separation agreement.

In affirming the trial court the Court of Appeals held that N.C.G.S. § 31A-1 "is an absolute bar to defendant's claim to have plaintiff pay her one-half of his retirement pay pursuant to the deed of separation." The Court of Appeals noted that if defendant had not been married to plaintiff at the time of the separation agreement she would have had no right to claim anything from plaintiff. But since she was married to plaintiff at the time of the separation agreement her right to claim one-half of plaintiff's retirement pay was a property right "in consideration of the marriage." Therefore, the bigamous marriage of defendant, under "the plain language of G.S. 31A-1," relieved plaintiff from "his obligation to support defendant." *Taylor v. Taylor*, 84 N.C. App. 391, 395, 352 S.E. 2d 918, 920.

On appeal to this Court defendant argues that N.C.G.S. § 31A-1(b)(6) is inapplicable to separation agreements because it is substantively the same as the predecessor statute to § 31A-1 (b)(6), which was enacted to address the issues of antenuptial and postnuptial agreements only. Defendant argues

that antenuptial agreements are in contemplation of marriage and postnuptial agreements contemplate the parties staying together in marriage, thus both would be addressed under § 31A-1(b)(6) since both agreements deal with settlements in consideration of the marriage. Conversely, defendant argues that the separation agreement in the case *sub judice* is an agreement in contemplation of the ending of the marriage, thus § 31A-1(b)(6) is inapplicable.

The pertinent part of N.C.G.S. § 31A-1, as relied on by the Court of Appeals, reads as follows:

(a) The following persons shall lose the rights specified in subsection (b) of this section:

(1) A spouse from whom or by whom an absolute divorce or marriage annulment has been obtained or from whom a divorce from bed and board has been obtained; or

(2) A spouse who voluntarily separates from the other spouse and lives in adultery and such has not been condoned; or

(3) A spouse who wilfully and without just cause abandons and refuses to live with the other spouse and is not living with the other spouse at the time of such spouse's death; or

(4) A spouse who obtains a divorce the validity of which is not recognized under the laws of this State; or

(5) A spouse who knowingly contracts a bigamous marriage.

(b) The rights lost as specified in subsection (a) of this section shall be as follows:

(1) All rights of intestate succession in the estate of the other spouse;

(2) All right to claim or succeed to a homestead in the real property of the other spouse;

(3) All right to dissent from the will of the other spouse and take either the intestate share provided or the life interest in lieu thereof;

(4) All right to any year's allowance in the personal property of the other spouse;

(5) All right to administer the estate of the other spouse; and

(6) Any rights or interests in the property of the other spouse which by a settlement before or after marriage were settled upon the offending spouse solely in consideration of the marriage.

. . .

N.C.G.S. § 31A-1 (1984).

[1] We disagree with the Court of Appeals' holding that the above statute creates a bar to defendant's claim under the separation agreement. In doing so we note at the outset that subsection (b)(6) of the statute, in its original form or as amended, has not heretofore been interpreted by this Court. However, we agree with defendant that the amended statute, pertinent to this appeal, is substantively the same as the prior statute. *See* W. Bolich, *Acts Barring Property Rights*, 49 N.C.L. Rev. 175, 178-82 (1962). Admittedly, subsection (b)(6) is unclear, *see* 2 R. Lee, *North Carolina Family Law*, § 219, n. 20 (4th ed. 1980), but the apparent purpose of the full statute is to bar the benefits of certain types of property rights and interests otherwise accruing to a person but for his wrongful acts or a divorce or annulment. *See* W. Bolich, *Acts Barring Property Rights*, 49 N.C.L. Rev. 175, 175 (1962). However, a respected authority has questioned the application of subsection (b)(6) to separation agreements. "It is doubtful that separation agreements, contemplating a separation or a divorce, are affected by N.C. Gen. Stat. § 31A-1(b)(6)." 2 R. Lee, *North Carolina Family Law*, § 219, n. 20 (4th ed. 1980). Also, N.C.G.S. § 50-20 provides that property settlement agreements may be entered before, during, or after the marriage, and the agreement is binding on the parties. *See Buffington v. Buffington*, 69 N.C. App. 483, 317 S.E. 2d 97 (1984) (property settlement agreements may be entered prior to separation of the parties). Therefore, we agree in part with the dissenting opinion of Judge Greene: were we to hold that N.C.G.S. § 31A-1 was applicable to separation agreements then *all* separation agreements entered into prior to divorce would be unenforceable after the divorce. *See* N.C.G.S. § 31A-1(a)(1) (1984). Clearly, this is not the law of this jurisdiction. *See Haynes v. Haynes*, 45 N.C. App. 376, 263 S.E. 2d 783 (1980) (separation agreement is a contract, enforceable after the divorce). Therefore, we hold that N.C.G.S. § 31A-1(b)(6)

Taylor v. Taylor

is inapplicable to separation agreements entered into by parties contemplating a separation or divorce from a valid marriage.

[2]   Because we hold that N.C.G.S. § 31A-1(b)(6) is inapplicable to the instant case, we must decide whether a bigamous marriage is equivalent to "remarriage" as used in the parties' separation agreement. A bigamous marriage is *void ab initio* in this State. N.C.G.S. § 51-3 (1984) ("All marriages . . . between persons either of whom has a husband or wife living at the time of such marriage . . . shall be void."). A bigamous marriage is a nullity, with no legal rights flowing from it, and can be collaterally attacked at any time. *See Ivery v. Ivery*, 258 N.C. 721, 129 S.E. 2d 457 (1963). Therefore, because a bigamous marriage is void from the outset, we hold that the bigamous marriage of defendant is not the equivalent of remarriage as used in the parties' separation agreement.

However, our holding that a bigamous marriage is not legally recognized under our statutes is not dispositive of the issue on appeal. We must now address the issue whether defendant, who knowingly entered a bigamous marriage, is subsequently estopped from asserting the invalidity of that marriage in order to avoid the consequences flowing from her wrongful conduct.

Even though under N.C.G.S. § 51-3 a bigamous marriage is *void ab initio*, our courts have held that a party may be estopped from asserting the invalidity of the bigamous marriage. *See McIntyre v. McIntyre*, 211 N.C. 698, 191 S.E. 507 (1937). "Under quasi-estoppel doctrine, one is not permitted to injure another by taking a position inconsistent with prior conduct, regardless of whether the person had actually relied upon that conduct." *Mayer v. Mayer*, 66 N.C. App. 522, 532, 311 S.E. 2d 659, *disc. rev. denied*, 311 N.C. 760, 321 S.E. 2d 140 (1984).[1]

---

1. Professor Clark has noted that there are three factors involved in analyzing quasi-estoppel cases involving invalid divorce decrees. These factors are as follows: "(1) the attack on the divorce is inconsistent with prior conduct of the attacking party; (2) the party upholding the divorce has relied upon it, or has formed expectations based on it; (3) these relations or expectations will be upset if the divorce is held invalid." Clark, *Estoppel Against Jurisdictional Attack on Decrees of Divorce*, 70 Yale L. J. 45, 56-57 (1960). However, under quasi-estoppel it is not necessary for all three factors to be present. *See* Restatement (Second) *Conflict of Laws* § 74 (1971).

In *McIntyre v. McIntyre*, 211 N.C. 698, 191 S.E. 507, defendant-husband asserted as a defense, in an action by plaintiff-wife for divorce and for alimony, the invalidity of their marriage. Prior to participating in a marriage ceremony with plaintiff, defendant, a North Carolina resident married to a North Carolina resident, went to Nevada to obtain a divorce. Upon his return to North Carolina defendant entered into a marriage ceremony with plaintiff. However, due to a lack of jurisdiction and an absence of personal service, the Nevada divorce decree was invalid in North Carolina. Thus, defendant's defense was that he and plaintiff were not legally married to each other. This Court upheld the trial court's instructions to the jury, which substantively stated "that the law of North Carolina prohibited the defendant from asserting the invalidity of a decree of divorce obtained by him in a foreign state." *McIntyre*, 211 N.C. at 699, 191 S.E. at 507. This Court further noted that "it would not seem to be in accord with reason and justice that one who has voluntarily invoked the jurisdiction of another state for the purpose of obtaining a divorce from a former wife, and has thereby been enabled to enter into marital relations with another, should be heard to impeach the decree which he had obtained, or to question its jurisdiction, when new rights and interests have arisen as a result of his second marriage." *Id.* In essence, this Court refused to allow one who voluntarily entered into a bigamous marriage to assert the invalidity of that marriage in order to avoid paying alimony.

Similarly, in *Mayer v. Mayer*, the Court of Appeals, relying in part on this Court's decision in *McIntyre*, applied a quasi-estoppel doctrine to bar a husband from asserting as a defense the invalidity of his second marriage. *Mayer*, 66 N.C. App. 522, 311 S.E. 2d 659, *disc. rev. denied*, 311 N.C. 760, 321 S.E. 2d 140. In *Mayer*, the husband had helped his soon-to-be wife procure an invalid foreign divorce from her prior husband. When this second marriage failed the husband asserted as a defense to a claim for alimony the invalidity of the foreign divorce. The husband claimed that his wife was still married to her first husband, thus the marriage to him was invalid with no legal rights flowing from it. In holding that the husband was estopped from denying the validity of the foreign divorce, the Court of Appeals noted that "in spite of the criticism that the application of a quasi-estoppel doctrine circumvents a state's divorce law, it would be even more inimical

to our law and to our public policy, to permit [the husband] to avoid his marital obligations by acting inconsistently with his prior conduct." *Mayer*, 66 N.C. App. at 532, 311 S.E. 2d at 666.

In *McIntyre* and in *Mayer* the parties involved in the litigation were those who participated in the bigamous marriage. In *McIntyre* the second wife was aware of the Nevada divorce and in *Mayer* the second spouse actively participated in obtaining the invalid divorce decree. However, neither this Court nor the Court of Appeals had difficulty in applying a quasi-estoppel doctrine to prevent one party from benefiting from his wrongful conduct by asserting the invalidity of the bigamous marriage. In the case *sub judice*, plaintiff is an innocent third party, a non-participant to the bigamous marriage. This case thus presents an even more compelling case for the application of a quasi-estoppel doctrine.

Like the offending parties in *McIntyre* and *Mayer*, defendant here seeks to assert the invalidity of a bigamous marriage into which she voluntarily entered. It would not seem to be in accord with reason and justice that one who has voluntarily entered into a marriage ceremony with another, and lived with that person as though they were married, should be heard to impeach that marriage in order to obtain alimony based on the dissolution of a previous marriage. It would be inimicable to our law and to our public policy, to permit the defendant here to voluntarily go to South Carolina, get a marriage license, enter into a marriage ceremony with another and receive benefits therefrom and then continue to obtain alimony from her first husband on the grounds that she has not remarried. To do so would make a mockery of our laws.

We hold that defendant is estopped to deny that she was remarried on 9 April 1985 as a defense to this action and that the trial court correctly terminated plaintiff's obligation to pay alimony under the separation agreement on that date. Accordingly, the decision of the Court of Appeals, which affirmed the trial court on different grounds, is modified and affirmed.

Modified and affirmed.