In The Matter of the Estate of DANIEL R. HANNER, (98 E 0411) PATRICIA H. HANNER, Petitioner v. DANIEL R. HANNER and CATHRYN H. McKNIGHT, Respondents

No. COA00-1123

(Filed 6 November 2001)

**Intestate Succession— election of life estate in marital home—presumption of validity of second marriage**

Even though respondents, decedent's children, contend that petitioner was not the wife of intestate decedent at the time of his death since petitioner allegedly had never been validly divorced from her first husband when she married decedent, the trial court did not abuse its discretion by finding that petitioner was married to decedent at the time of his death and that petitioner was entitled to elect a life estate in the marital home in addition to a fee simple interest in the household furnishings in lieu of an intestate share of the estate because respondents failed to meet their burden of proof to overcome the presumption of the validity of petitioner's second marriage to decedent when petitioner presented evidence of a marriage license between petitioner and decedent.

Appeal by respondents from judgment entered 23 May 2000 by Judge Michael E. Beale in Union County Superior Court. Heard in the Court of Appeals 22 August 2001.

*Essex, Richards, Morris, Jordan & Matus, P.A., by Stephen H. Morris and Lisa T. Kelly, for petitioner-appellee.*

*Clark, Griffin & McCollum, L.L.P., by Richard S. Clark and Bobby H. Griffin, for respondents-appellants.*

HUDSON, Judge.

On 2 February 1999, petitioner filed a Notice of Election of Life Estate in the Matter of the Estate of Daniel R. Hanner. On 4 March 1999, Daniel R. Hanner, Jr., a respondent in this issue, filed an answer to petitioner's Notice praying that the petition be denied. Respondent averred that petitioner was not the wife of decedent at the time of his death. The issue was heard in a special proceeding by the Clerk of Superior Court in Union County on 30 November 1999. The Clerk of Court found that petitioner was married to the decedent at the time of his death and "made an Election of Life Estate in the usual dwelling place of the decedent . . . along with a fee simple interest in the household furnishings located therein. . . ." The Clerk of Court entered an order on 16 December 1999 that a jury "shall be appointed who shall allot and set apart" the life estate and fee simple interest in the property. Respondents, the decedent's son and daughter, appealed the Clerk of Court's Order. The Union County Superior Court heard respondents' appeal *de novo* and entered judgment on 23 May 2000. The court found that petitioner was married to decedent at the time of his death, and that she was entitled to a life estate in the real property in addition to a fee simple interest in the household furnishings. Respondents appealed, and we affirm the trial court.

Petitioner married Craig T. Evers on 1 September 1978. They separated and Mr. Evers filed a Petition for Dissolution of Marriage with the Thirteenth Judicial District Court of New Mexico seeking divorce from petitioner. On 15 August 1991, the court entered a "FINAL DECREE" that appeared to dissolve the marriage between Mr. Evers and petitioner. The decretal part of the decree, however, appears to be part of a form which merely restates the allegation of grounds for divorce. Both parties signed the "FINAL DECREE" and married other persons soon afterward.

Petitioner married the decedent, Daniel R. Hanner, Sr., on 3 March 1992 in South Carolina, and they had no children during their marriage. The couple lived together at 9323 Machado Drive, Indian Trail, Union County, North Carolina up until the death of decedent, Mr. Hanner, on 1 October 1998. Decedent was survived by petitioner

and his two children from a previous marriage, Daniel R. Hanner, Jr. and Cathryn McKnight.

Decedent Daniel R. Hanner, Sr. died intestate and petitioner was appointed administrator of the estate. Petitioner filed a Notice of Election of Life Estate, pursuant to N.C. Gen. Stat. § 29-30 (1999), in which she elected to take a life estate in the marital home instead of her intestate share of the estate. At some point, petitioner requested from the district court in New Mexico a copy of her divorce decree from Craig Evers. On 29 October 1999, evidently without any prompting from the parties involved, the Thirteenth Judicial District Court of New Mexico entered a *nunc pro tunc* "FINAL DECREE OF DIVORCE" for petitioner and Craig Evers. This Decree ordered:

1. That the marriage of the parties is hereby dissolved on the grounds of incompatibility.

2. That the effective date of this Decree shall be considered as of August 15, 1991, because it is clear from the attached Exhibit "A", that the parties had a good faith basis to believe they were divorced on that date, and that the Honorable Martin G. Pearl believing that he was dissolving the marriage between the parties at the time of the signing thereof.

The respondents objected to petitioner receiving a life estate in the marital property, based on their contention that petitioner had never been actually divorced and thus, she and the deceased were never validly married. Thus began this case.

On appeal, respondents raise five assignments of error. Because we hold that respondents failed to overcome the presumption that the marriage between petitioner and the decedent was valid, we need only address respondents' second assignment of error. Our Supreme Court, in *Kearney v. Thomas*, first articulated the presumption of the validity of a second marriage: "[a] second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. In such case the presumption of innocence and morality prevail over the presumption of the continuance of the first or former marriage." 225 N.C. 156, 164, 33 S.E.2d 871, 877 (1945) (citations omitted). The Court in *Denson v. Grading Co.* reiterated this presumption:

'[t]he decided weight of authority . . . is that when two marriages of the same person are shown, the second marriage is presumed

to be valid; that such presumption is stronger than or overcomes the presumption of the continuance of the first marriage, so that a person who attacks a second marriage has the burden of producing evidence of its invalidity. When both parties to the first marriage are shown to be living at the time of the second marriage, it is presumed in favor of the second marriage that the first was dissolved by divorce.'

28 N.C. App. 129, 131, 220 S.E.2d 217, 219 (1975) (quoting *Parker v. American Lumber Corp.*, 56 S.E.2d 214, 216 (Va. 1949)). Here, respondents have that burden. Petitioner presented a marriage license issued to Daniel Richard Hanner, Sr. (decedent) and Patricia Harris Evers (petitioner) on 3 March 1992 in York County, South Carolina. This evidence is sufficient to invoke the presumption that petitioner's marriage to the decedent was valid. *See Mayo v. Mayo*, 73 N.C. App. 406, 410, 326 S.E.2d 283, 286 (1985) (holding that the first wife successfully rebutted the presumption that husband's second marriage was valid after the second wife invoked the presumption of legitimacy).

Respondents argue that petitioner's previous marriage to Craig Evers was not validly dissolved, meaning that petitioner's subsequent marriage to decedent was invalid. Respondent's introduction of the "FINAL DECREE" entered in the Thirteenth Judicial District Court of New Mexico does not meet respondents' burden. We need not decide whether this "FINAL DECREE" is valid or not, because we note that from the record it appears that the court in New Mexico believed that it was taking an action amounting to a final divorce between petitioner and Craig Evers.[1]

Here, as in other domestic law decisions, "appellate review is limited to a determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). We find no abuse of discretion in the trial court's finding that respondents did not meet their burden of proof to overcome the presumption of the validity of petitioner's marriage to the decedent. Therefore, we do not address the other issues raised by respondents.

---

1. Under a New Mexico statute, *nunc pro tunc* orders may be entered "[w]henever determined to be in the interest of justice." N.M. Stat. Ann. § 34-6-31 (1999). To the extent that the original decree was defective, we presume that the Union County district court believed either that the New Mexico court validly corrected the same, in the interest of justice, or that the respondent did not prove otherwise.

Affirmed.

Judges McGEE and JOHN concur.