IN THE MATTER OF THE ESTATE OF PEGGY FAIRLEY ANDERSON, DECEASED

No. COA01-143

(Filed 5 February 2002)

**1. Estates— revocation of letters of administration—summary judgment**

The trial court should not have granted summary judgment for petitioner (McRae) in an action to revoke letters of administration issued to respondent (Anderson) for the estate of Fairley where Fairley first married McRae, told him that she was divorcing him but apparently never did so, and subsequently married Anderson, and McRae subsequently remarried. The parties presented conflicting evidence about whether McRae's acts were knowing and whether they were condoned by Fairley, which bore on whether McRae would be barred from recovering from the estate as a surviving spouse and therefore on whether McRae lacked standing.

IN RE ESTATE OF ANDERSON

[148 N.C. App. 501 (2002)]

2. **Estates— qualification of administrator—standing to assert estoppel**

The administrator of an estate (Anderson) did not have standing to assert estoppel against a petitioner (McRae) seeking to have Anderson's letters of administration revoked where the decedent (Fairley) had been married to both. The action involved Anderson's qualification as administrator rather than Fairley's interests, and Anderson lacks the necessary privity to argue that McRae's subsequent second marriage bars McRae from challenging Fairley's second marriage (to Anderson.)

Judge CAMPBELL dissenting.

Appeal by petitioner Ernest McRae from order filed 4 October 2000 by Judge William H. Helms in Richmond County Superior Court. Heard in the Court of Appeals 27 November 2001.

*Donaldson & Black, P.A., by Arthur J. Donaldson and Rachel Scott Decker, for petitioner-appellant.*

*Sharpe & Buckner, PLLC, by Richard G. Buckner, for respondent-appellee.*

*No brief filed for pro se respondent children.*

GREENE, Judge.

Petitioner Ernest McRae (McRae) appeals an order filed 4 October 2000 granting summary judgment in favor of respondent Alforence Anderson (Anderson).

On 11 December 1997, McRae filed a petition to revoke the letters of administration issued to Anderson as the administrator of the estate of Peggy Fairley Anderson (Fairley) and to request the appointment of a suitable administrator to take Anderson's place. The petition asserts McRae married Fairley on 22 June 1962 and at no time prior to Fairley's death on 3 September 1991 did McRae and Fairley obtain a divorce. While McRae acknowledges in his petition that Fairley and Anderson participated in a wedding ceremony on 10 September 1965, McRae contends this marriage is void.

An order to show cause filed 11 December 1997 was issued to Anderson by the Clerk of Superior Court of Richmond County (the clerk). Anderson filed a response on 10 March 1998 challenging McRae on the grounds of standing under N.C. Gen. Stat. § 31A-1 and estoppel. In his answer to McRae's request for admissions filed 4 May

1998, Anderson denied any knowledge of McRae's marriage to Fairley until after Fairley's funeral when Anderson was presented with a marriage certificate proving the marriage. Anderson's answer further stated: Fairley had five children when Anderson married her; three more children were born in the years following the marriage ceremony of Anderson and Fairley; and Anderson and Fairley lived together as husband and wife for twenty-six years, until Fairley's death.

In a deposition on 10 February 1999, McRae testified that sometime after their marriage in 1962, Fairley told McRae she was going to divorce him but that he never received any court documents evidencing such a divorce. Believing nevertheless that Fairley had divorced him, McRae entered into a marriage ceremony with Doris McDonald (McDonald) on 13 August 1966. McDonald subsequently divorced McRae because she found out McRae was still married to Fairley. For the last twenty-five to thirty years, McRae has filed his tax returns as a single person. McRae admitted to having heard rumors over the years that he was still married to Fairley, but he never asked Fairley whether or not they were divorced.

By order of the clerk filed 7 September 1999, the matter was transferred to the superior court for trial by jury pursuant to N.C. Gen. Stat. § 1-174 and § 1-273(a) (repealed 1999). *See Burke v. Harrington*, 35 N.C. App. 558, 559-60, 241 S.E.2d 715, 716-17 (1978) (cause of action must be transferred to superior court pursuant to N.C. Gen. Stat. § 1-174 for jury determination of factual issues). Anderson filed a motion for summary judgment on 13 September 2000. The trial court granted Anderson's motion in its October 4 order, thereby dismissing McRae's petition.

---

The issues are whether: (I) there are genuine issues of material fact as to whether McRae lacked standing under N.C. Gen. Stat. § 31A-1 to petition the superior court for relief; and (II) Anderson had standing to raise the issue of quasi-estoppel as a bar to McRae's challenge of the validity of Anderson's marriage to Fairley.

I

*N.C. Gen. Stat. § 31A-1*

[1] Anderson successfully argued to the trial court that under N.C. Gen. Stat. § 31A-1 McRae would be barred from recovering from Fairley's estate as a surviving spouse and therefore lacked standing

as a real party in interest to petition the superior court to remove Anderson as the administrator of Fairley's estate. Only a real party in interest has the legal right to maintain a cause of action. N.C.G.S. § 1-57 (1999); *see Crowell v. Chapman*, 306 N.C. 540, 544, 293 S.E.2d 767, 770 (1982). A real party in interest is one "who is benefit[t]ed or injured by the judgment in a case." *Parnell v. Nationwide Mut. Ins. Co.*, 263 N.C. 445, 448, 139 S.E.2d 723, 726 (1965). Section 31A-1 bars the rights of a spouse who engages in certain conduct, including the following: (1) the spouse "voluntarily separates from the other spouse and lives in adultery and such has not been condoned," N.C.G.S. § 31A-1(a)(2) (1999); (2) the spouse "willfully and without just cause abandons and refuses to live with the other spouse and is not living with the other spouse at the time of such spouse's death," N.C.G.S. § 31A-1(a)(3) (1999); or (3) the spouse "knowingly contracts a bigamous marriage," N.C.G.S. § 31A-1(a)(5) (1999). There is no evidence in the record, McRae "willfully or without just cause" abandoned Fairley, leaving this Court to consider the remaining two actions alleged by Anderson.

As to section 31A-1(a)(2), which bars a spouse who "voluntarily separates from the other spouse and lives in adultery and such has not been condoned," the critical element appears to be whether Fairley "condoned" McRae's conduct. Condonation is defined as the "implied forgiveness" of an "offense." *Black's Law Dictionary* 295 (6th ed. 1990). If Fairley indeed never sought a divorce, her marriage to Anderson could reasonably be construed as condonation of any equivalent conduct by McRae. Anderson, on the other hand, contends Fairley never knew of McRae's marriage to McDonald and thus there could not have been any condonation. In respect to section 31A-1(a)(5), barring a spouse who "knowingly contracts a bigamous marriage," McRae asserts he believed Fairley had divorced him and only became suspicious upon hearing rumors years later. Consequently, McRae claims his actions were not committed "knowingly." Because the parties presented conflicting evidence dealing with subjective feelings and intent, i.e. whether McRae's acts were knowing and condoned by Fairley, summary judgment based on the operation of section 31A-1 was not proper. *See Creech v. Melnik*, 347 N.C. 520, 530, 495 S.E.2d 907, 913 (1998) (summary judgment "inappropriate where issues such as motive, intent, and other subjective feelings and reactions are material and where the evidence is subject to conflicting interpretations"); *see also* N.C.G.S. § 1A-1, Rule 56(c) (1999) (summary judgment inappropriate where genuine issues of material fact exist).

## II

### *Estoppel*

[2] Anderson further argues summary judgment was proper because McRae's prior conduct estops him from attacking the validity of Anderson's marriage to Fairley. North Carolina courts presume the validity of a second marriage unless " 'the contrary [is] proved.' " *Ivory v. Greer Bros., Inc.*, 45 N.C. App. 455, 459, 263 S.E.2d 290, 293 (1980) (quoting *Kearney v. Thomas*, 225 N.C. 156, 164, 33 S.E.2d 871, 877 (1945)). The burden to disprove the validity of the second marriage rests on the attacking party. *Id.* A party, however, may be barred under quasi-estoppel from such an attack if the "attack . . . is inconsistent with [his or her] prior conduct." *Mayer v. Mayer*, 66 N.C. App. 522, 533, 311 S.E.2d 659, 667, *disc. review denied*, 311 N.C. 760, 321 S.E.2d 140 (1984) (citing Homer Clark, *Estoppel Against Jurisdictional Attack on Decrees of Divorce*, 70 Yale L.J. 45, 56 (1960)). This is so " 'regardless of whether the person [attacked] had actually relied upon that conduct.' " *Taylor v. Taylor*, 321 N.C. 244, 249, 362 S.E.2d 542, 546 (1987) (citation omitted). Failure of a person to obtain a copy of a divorce judgment prior to entering into a second marriage constitutes culpable negligence, barring that person under quasi-estoppel from assuming a legal position inconsistent with such previous negligence. *Lane v. Lane*, 115 N.C. App. 446, 452, 445 S.E.2d 70, 73 (citing *Redfern v. Redfern*, 49 N.C. App. 94, 97, 270 S.E.2d 606, 608-09 (1980)) (plaintiff estopped from challenging validity of second marriage where she was culpably negligent in not obtaining a copy of the divorce judgment before remarrying), *disc. review denied*, 338 N.C. 311, 452 S.E.2d 311 (1994).

But in order for a party to have standing to raise the issue of estoppel, the asserted estoppel must be "mutual and reciprocal." 28 Am. Jur. 2d *Estoppel and Waiver* § 115 (1966). According to the principle of mutuality, "an estoppel operates neither in favor of, nor against, strangers—that is persons who are neither parties nor privies to the transaction out of which the estoppel arose." *Id.*; *see Bank v. Rich*, 256 N.C. 324, 329, 123 S.E.2d 811, 815 (1962) (estoppel does not bind strangers). The administrator of an estate is recognized as standing in such privity with the decedent, as her personal representative, that an estoppel that would have operated for or on the decedent can be asserted by or against the administrator. *See* 28 Am. Jur. 2d *Estoppel and Waiver* § 121.

In this case, Anderson argues McRae's subsequent marriage to McDonald, which McRae entered into without obtaining a divorce

**IN RE ESTATE OF ANDERSON**

[148 N.C. App. 501 (2002)]

judgment for his marriage to Fairley, bars McRae from challenging Anderson's marriage to Fairley. Anderson, however, has no standing to raise this issue since the case at hand involves the preliminary consideration of Anderson's qualification as administrator of Fairley's estate, not a representation of Fairley's interests by the administrator of her estate. In defending his own status, Anderson did not step "in the shoes of" the decedent, *Cheshire v. First Presbyterian Church*, 225 N.C. 165, 168, 33 S.E.2d 866, 867 (1945), and thus attain the privity required to argue estoppel, *Rich*, 256 N.C. at 329, 123 S.E.2d at 815. For the purposes of this proceeding, Anderson remained a stranger to the marriage between McRae and Fairley and McRae's and Fairley's subsequent conduct in relation to this marriage and thus did not have standing to assert estoppel against McRae.[1]

## *Summary*

In conclusion, the trial court erred in granting summary judgment to Anderson because there were genuine issues of material fact as to the issue of McRae's standing under section 31A-1. The trial court also erred in its grant of summary judgment to Anderson on the basis of estoppel because Anderson lacked standing to raise this issue. We therefore remand this case to the trial court for trial on the merits pursuant to section I of this opinion and for entry of summary judgment in favor of McRae on the issue of estoppel under section II, *see* N.C.G.S. § 1A-1, Rule 56(c) (summary judgment proper if there is no genuine issue of material fact and "any party is entitled to a judgment as a matter of law").

Reversed and remanded.

Judge McCULLOUGH concurs.

Judge CAMPBELL dissents.

---

1. In *In re Estate of Hanner*, 146 N.C. App. 733, 554 S.E.2d 673 (2001), this Court found that the children of the deceased father could properly attack the validity of their father's marriage to the petitioner who had been married before but whose divorce decree from her previous marriage appeared to be flawed. This Court held that the children had failed to overcome the burden of disproving the validity of the petitioner's second marriage to the father and ruled in favor of the petitioner. *Id.* As noted above, an attack on the validity of a second marriage can be barred under the theory of estoppel if raised by a party with the requisite privity. *See* 28 Am. Jur. 2d *Estoppel and Waiver* § 115. The issue of privity, however, was not raised in *Hanner* because the facts did not support an argument of estoppel. If they had, the children in *Hanner* would have had to show privity as required of Anderson in this case.

**IN RE ESTATE OF ANDERSON**

[148 N.C. App. 501 (2002)]

CAMPBELL, Judge, dissenting.

This is a proceeding pursuant to N.C. Gen. Stat. § 28A-9-1 to have respondent Anderson removed as administrator of the estate of Peggy Fairley Anderson. On 11 December 1997, petitioner McRae filed a motion to revoke the letters of administration issued to Anderson and to request the appointment of a suitable successor administrator.

The clerk of superior court issued an order to respondent Anderson to show cause why his letters of administration should not be revoked. Anderson filed a response on 10 March 1998 challenging McRae's petition on the grounds of standing, estoppel, laches, and the statute of limitations. By order of the clerk filed 7 September 1999, the matter was transferred to the civil issue docket of superior court for trial of the factual issues pursuant to N.C. Gen. Stat. § 1-174 and § 1-273(a) (repealed and replaced by N.C. Gen. Stat. § 1-301.1 to § 1-301.3, effective 1 Jan. 2000).

On 13 September 2000, respondent Anderson filed a motion for summary judgment, claiming there were no genuine issues of material fact and that he was entitled to judgment as a matter of law. The trial court granted respondent's motion for summary judgment by order entered 4 October 2000, and dismissed McRae's petition to revoke Anderson's letters of administration. The majority opinion concludes that the trial court erred in granting summary judgment to Anderson because there were genuine issues of material fact as to the issue of McRae's standing to bring the petition, and Anderson lacked proper standing to raise the issue of estoppel. Accordingly, the majority opinion remands the matter to superior court for trial on the merits of the issue of standing, and directs entry of summary judgment in favor of McRae on the issue of estoppel.

I respectfully dissent from the majority opinion for I conclude that the trial court did not have subject matter jurisdiction to enter summary judgment on the merits of McRae's petition to revoke Anderson's letters of administration. Therefore, I would vacate the trial court's summary judgment order and remand this matter to superior court for a jury trial on the factual issues presented by McRae's petition.[2] When these factual issues have been determined by the

2. At this stage of a proceeding to revoke letters of administration, the function of the superior court is simply to supervise the jury trial of any issues of fact that are presented by the petition to revoke and have been properly transferred to superior court by the clerk. This role is different from determining whether there are genuine issues of material fact related to the legal question presented by the petition—whether

jury, the matter is to be remanded to the clerk of superior court for determination of the legal question presented—whether Anderson's letters of administration should be revoked. The clerk's decision on this issue is then subject to appeal to superior court pursuant to N.C. Gen. Stat. § 28A-9-4.

The clerk of superior court has express authority under N.C.G.S. § 28A-9-1 (formerly N.C.G.S. § 28-32) "to revoke letters of administration which were improperly issued and to remove any administrator who has been guilty of default or misconduct in the execution of his office." *In re Estate of Lowther*, 271 N.C. 345, 347, 156 S.E.2d 693, 695 (1967). In *In re Estate of Lowther*, Justice Sharp, writing for the Court, examined the history of the clerk of superior court's authority as judge of probate, and clearly set forth the proper procedure to be followed in proceedings to revoke letters of administration. Most importantly, Justice Sharp concluded (1) that proceedings to repeal letters of administration must be commenced before the clerk who issued them in the first instance, and (2) that the superior court has no jurisdiction to appoint or remove an administrator. *Id.* at 354, 156 S.E.2d at 700. "In other words, jurisdiction in probate matters cannot be exercised by the judge of the Superior Court except upon appeal." *Id.*

The procedure that Justice Sharp held to be proper in proceedings of this sort was earlier set out by the Supreme Court in *Murrill v. Sandlin*, 86 N.C. 54 (1882), a proceeding to remove an administrator, in which the Court said:

It is thus incumbent on the probate judge to make the inquiry, and ascertain for himself the facts upon which the legal discretion reposed in him to remove an incompetent or unfaithful officer, is to be exercised. The original authority to act is delegated to him alone, and he may require the whole issue made between the parties, or any specific question of fact, to be tried by a jury, under the supervision of the judge of the superior court. When these have been determined by the jury, the probate judge, with such supplemental findings of fact by himself as may be necessary, proceeds to decide the question of removal, subject to the right of either party to the contest to have the cause reheard upon appeal.

the letters of administration at issue should be revoked. The superior court does not have jurisdiction at this point to make such a determination. *See In re Estate of Lowther*, 271 N.C. 345, 156 S.E.2d 693 (1967).

*Id.* at 55. The subsequent repeal of N.C.G.S. § 28-32 and its replacement by N.C.G.S. § 28A-9-1 does not alter the procedure that should be followed in a proceeding to revoke letters of administration.

Applying the principles reaffirmed by Justice Sharp's opinion in *In re Estate of Lowther,* the procedure that should have been followed upon the clerk's transfer of this matter to superior court was to have a jury trial on the factual issues presented by McRae's petition. The findings of fact determined by the jury should then have been submitted to the clerk for the clerk to make the initial legal determination of whether Anderson's letters of administration should be revoked. Thus, I would vacate the trial court's summary judgment order, and remand for proceedings consistent with the Supreme Court's decision in *In re Estate of Lowther.*

In addition, I note that the ultimate factual and legal determinations entered in the subsequent proceedings in this matter would not be res judicata in any other proceeding between the parties which petitioner McRae may be entitled to pursue.[3] *In re Estate of Lowther,* 271 N.C. 345, 156 S.E.2d 693; *Jones v. Palmer,* 215 N.C. 696, 2 S.E.2d 850 (1939).

―――――――――――

3. Specifically, the two actions which the record indicates McRae has already commenced against Anderson: (1) the partition proceeding in 97 SP 163, and (2) the action for wrongful distribution of proceeds and benefits in 97 CVS 1345.